```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF NEW YORK
```

****************************términos
UNITED STATES OF AMERICA,

    v.

                                          Cr. No. 10-CR-321 (TJM)

RICHARD ENRIQUE ULLOA,

        Defendant.

****************************

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL

### PRELIMINARY STATEMENT

Defendant Richard Enrique Ulloa filed a post-trial motion, *see ECF no. 114*, seeking a judgment of acquittal pursuant to Rules 29 and 33, of the Federal Rules of Criminal Procedure. As set forth below, defendant's motion should be denied.

The superseding indictment charges Defendant Richard Enrique Ulloa with seven counts of mail fraud pursuant to 18 U.S.C. §§ 1341 and 1349. The trial commenced on December 28, 2010. On December 30, 2010, the jury returned guilty verdicts on all seven counts.

I.

**EVIDENCE PRESENTED AT TRIAL**

    A.    **The False Ulster County UCC Liens and Filings.**

Police Officer Joshua Caliendo testified that on or about May 13, 2009, he stopped a vehicle and issued traffic tickets to the driver, defendant Richard Enrique Ulloa. The traffic tickets required defendant's appearance before Town Justice Robert Vosper. Town Justice Robert Vosper testified that defendant appeared in town court in June 2009, and the Town Justice set bail, and bail resulted in defendant's incarceration for a period of time.

Police Officer Caliendo testified that he received a copy of a Washington State UCC Lien, by mail. The evidence at trial established that the lien was filed against Joshua Caliendo personally, by Richard Enrique Ulloa, in the amount of more than $550,000,000, and was dated September 24, 2009, months after the vehicle stop. *See Trial Exhibit 1* (Count Two).

Likewise, Town Justice Vosper testified that he received a copy of a Washington State UCC Lien, by mail. The evidence at trial established that the lien was filed against Robert N. Vosper, by Richard Enrique Ulloa, in the amount of more than $550,000,000, and was dated September 24, 2009, months after the court appearance. *See Trial Exhibit 3* (Count One).

The evidence at trial established that the UCC liens were typically preceded by written demands for money by defendant Ulloa.  For example, Town Justice Vosper testified that he received a "Declaration and Notice of Final Determination and Judgment in Nihil Deceit", which demand payment of monies owed. *See Trial Exhibit 2*.  Following non-payment, defendant filed a UCC lien in either Washington or New York State.  In each instance the UCC lien stated that it "WILL BE SERVED ON ALL FINANCIAL INSTITUTIONS."  Moreover, the liens were purportedly based on "NOTICE OF CLAIM OF MARITIME LIEN[s]", which identified persons as vessels.  In some instances, the purported Maritime Liens contained the date of birth and/or the social security number of the purported debtors.  The Maritime Liens were purportedly based prior on "Negative Averment[s]."

Beatrice Havranek, the County Attorney for Ulster County, testified regarding the many frivolous written demands for money filed by defendant and the substantial country resources and personnel that were consumed to address said filings.  In one example, Ms. Havranek testified regarding a frivolous "Negative Averment" defendant filed; the county rejected said document. *See Exhibit 13*.  She also testified as to the legal fees incurred by an insurance carrier concerning representation of the county regarding a federal civil law suit filed on behalf of the county.  Ms. Havranek testified that failure to address each and every

filing may have resulted in a judgment against the county and the need to raise taxes to satisfy that judgment.

Nina Postupack, the Clerk for Ulster County, testified that she personally advised defendant that the county would not accept the purported Maritime Liens, and further testified that defendant was required to pick-up the rejected Maritime Liens.

### B. The False Mid-Hudson Valley Federal Credit Union UCC Liens.

Executives of Mid-Hudson Valley Federal Credit Union ("MHVFCU") William Spearman and John Dwyer, and legal counsel for MHVFCU, William Frame, Esq., testified regarding a foreclosure proceeding brought against real property held by defendant and the frivolous UCC liens that followed.  Specifically, William Frame, Esq., testified that, in September 2009, a state court entered a foreclosure judgment on behalf of MHVFCU regarding real property held by defendant.  He further testified that in reaching its decision to enter a foreclosure judgment, the state court considered defendant's affidavit of negative averment, opportunity to cure, and counterclaims, and rejected same.

The evidence at trial showed that one month following the foreclosure judgment, defendant filed a Washington State UCC Lien using the mail.  John Dwyer testified that he received a copy of a Washington State UCC Lien, by mail.  The evidence at trial established that the lien was filed against John Dwyer, by Richard Enrique Ulloa, in the amount of more than $2.8 billion,

4

and was dated October 6, 2009.  *See Trial Exhibit 4* (Count Three).  This lien too stated that it "WILL BE SERVED ON ALL FINANCIAL INSTITUTIONS", and was based on a frivolous "MARITIME LIEN."

The evidence at trial further established that, on October 20, 2009, defendant sent an email to the National Credit Union Administration, the regulatory authority of MHVFCU, and advised that authority of the $2.8 billion lien against MHVFCU.  *See Trial Exhibit 6.*  William Spearman testified as to the potential problems for MHVFCU that might have occurred if MHVFCU had failed to address said lien.  Mr. Spearman also testified regarding the need to retain legal counsel, and the costs associated with same, to address defendant's frivolous liens.

William Frame, Esq., legal counsel for MHVFCU, testified regarding a temporary restraining order MHVFCU obtained enjoining defendant from, among other things, filing Maritime Liens or Judgments.  *See Trial Exhibit 7*, dated November 2, 2009.  He also testified regarding an injunction MHVFCU obtained further enjoining defendant from, among other things, filing Maritime Liens or Judgments.  *See Trial Exhibit 8*, dated December 9, 2009. Finally, Mr. Frame testified as to the efforts made to serve defendant with notice of the temporary restraining order, and the defendant's participation regarding the injunction proceeding. Mr. Frame also testified regarding a UCC lien filed against his law firm, and the potential problems to the law firm of not

5

addressing the fraudulent lien.  Finally, Mr. Frame testified regarding a conversation he had with defendant Ulloa wherein the defendant revealed that he wanted to raised the costs of litigation by stating in substance the he [Ulloa] wanted to fill his [Frame's] file cabinet with legal memoranda.

The evidence at trial further established that defendant filed a New York State UCC Lien, by mail, months after the temporary restraining order and the injunction.  Indeed, *Trial Exhibit 5* (Count Four) is a New York State UCC lien filed against MHVFCU and its executives and its legal counsel by Richard Enrique Ulloa, in the amount of more than $2.8 billion, and was dated February 12, 2010.  *See Trial Exhibit 4* (Count Three). This lien too stated that it "WILL BE SERVED ON ALL FINANCIAL INSTITUTIONS", and was based on a frivolous and prohibited "MARITIME LIEN."  See *also Trial Exhibit 9* (Count Five, UCC Financing Statement, dated February 12, 2010, false promissory note by Denny Ray Harding, evidence of mailing).

    C.    **The False Wells Fargo UCC Liens.**

Brandlon L. Cannon testified on behalf of Wells Fargo Bank, N.A., regarding a second foreclosure proceeding brought against real property held by defendant.  See *Trial Exhibit 21* (Wells Fargo financial summary showing a balance of more than $170,000). *Trial Exhibit 17* (admitted through a representative of the New York State Department of State) is a summary of New York State UCC liens filed by Richard Enrique Ulloa.  According to that

6

summary, defendant filed a UCC lien against Wells Fargo Bank, N.A., and the law firm that represented the bank, on our about *January 4, 2010. See Trial Exhibit 19* (Count Six, UCC Financing Statement against Wells Fargo, dated February 12, 2010, false promissory note by Denny Ray Harding, evidence of mailing); *see also Trial Exhibit 20* (Count Seven, UCC Financing Statement against legal counsel for Wells Fargo, dated February 13, 2010).

    D.    **The Testimony of Michael Schnittman.**

Michael Schnittman testified regarding a collection action brought against a person associated with defendant and a judgment he obtained in March 2009. He also testified that defendant subsequently served him with a frivolous "Affidavit of Negative Averment, Opportunity to Cure, And Counterclaim", and Mr. Schnittman rejected same. Defendant subsequently filed a UCC lien against Michael S. Schnittman. *See Trial Exhibit 17* (summary of New York State UCC liens filed by Richard Enrique Ulloa, defendant filed a UCC lien against Schnittman, among others, on our about February 12, 2010).

    E.    **The Testimony of Special Agent Mark Maroney.**

Special Agent Mark Maroney testified as to numerous documents recovered during the execution of a search warrant at defendant's home. Those documents included, among other things, correspondence between legal counsel and defendant that the promissory notes of Denny Ray Harding (mentioned above) were determined to be fraudulent based upon an evaluation by the

7

Federal Reserve (*see Trial Exhibit 27*), a Liberty Data computer sheet containing the personal identification information of Michael Schnittman (*see Trial Exhibit 36*), and an American Express credit card account statement revealing charges for Liberty Data and the Washington State UCC Department of Licensing (*see Trial Exhibit 25*).

## II.

### ARGUMENT

**A.   There Is No Basis For A Judgment Of Acquittal.**

Defendant seeks a judgment of acquittal and a new trial pursuant to Fed. R. Crim. Proced. 29(c) and 33, respectively.

"A defendant challenging the sufficiency of the evidence supporting a conviction faces a 'heavy burden'." United States v. Genn, 312 F.3d 58, 63 (2d Cir. 2002)(quoting United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994)). The Court must ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979))(emphasis in original). "[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." United States v. Jackson, 335 F.3d 170, 180 (2d. Cir. 2003)(citing United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999)). "In this regard, the Court must avoid substituting

its own determination of the weight of the evidence presented and the reasonable inferences that may be drawn from that evidence." United States v. Morgan, No. 08-CR-208, 2009 WL 3644213 at *1 (N.D.N.Y. Oct. 29, 2009)(citing United States v. Jackson, 335 F.3d at 180). "Indeed, it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." United States v. Jackson, 335 F.3d at 180 (citing United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995)).

"'[T]he relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Glen, 312 F.3d at 63 (quoting Jackson v. Virginia, 443 U.S. at 319). A court's analysis considers "'the evidence in its totality,' and the Government 'need not negate every theory of innocence.'" Glenn, 312 F.3d at 63 (quoting United States v. Autuori, 212 F.3d 105, 114 (2d. Cir. 2000)). The relevant inquiry is "'whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" Autuori, 212 F.3d at 114 (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984)).

In United States v. Speight, 2003 WL 22025322 (C.A.2 (N.Y.)) (see Attachment A), the Second Circuit affirmed mail fraud convictions in the context of facts remarkably similar to the

9

instant case, i.e., false UCC liens. In that case, Speight, an inmate at an FCI, filed false UCC liens against federal prosecutors and a district judge who were involved in Speight's firearm's conviction. *See Attachment A*, page 3.

Speight challenged the adequacy of the government's proof at trial of mail fraud. *Id.* The Second Circuit rejected that challenge and affirmed the mail fraud convictions reasoning:

> [t]he evidence adduced at trial, when viewed in the light most favorable to the Government . . . showed that Speight, using the mails, devised and implemented a plan to trick federal officials into believing that they owed him millions of dollars so that they would pay him-even if only modest amounts-to terminate the liens. Speight, on the other hand, contends that he was making obviously fanciful claims which these officials were free to reject, that he never sought to conceal his identity, and that he sought these payments in "good faith." Whether Speight acted with innocent motives or with fraudulent intent was for the jury. Since the jury credited the government's proof of motive and rejected Speight's explanations of his conduct, his challenge on this ground fails.

*Id.* at 4.

In this case, there is more than ample evidence to support the guilty verdicts. As stated above, the evidence established that defendant was motivated by his efforts to retaliate against persons and entities that had displeased him in some manner. That is, persons and entities who had subjected him to some form of legal process, or participated in an economic enforcement action to obtain a judgment or foreclosure. The evidence further established that defendant, with intent to defraud, devised and intended to devise a scheme or artifice to defraud. That is,

defendant, using the mails, made numerous written fraudulent demands for payments of monies, and following non-payment, filed false UCC liens against the targeted persons and entities. Defendant did so for the purpose of obtaining money and property by means of materially false or fraudulent pretenses.  That is, defendant made false written demands for monies predicated on retaliation and not legitimate economic relationships.  See Speight, Attachment A, page 4 (demands for money and possibility of nominal payments sufficient); see also United States v. Wallach, 935 F.2d 445, 461 (2d Cir. 1991) (government not required to show that intended victim actually defrauded). Additionally, defendant filed false UCC liens to create indebtedness purportedly under the Uniform Commercial Code, and those false demands for money and indebtedness necessitated responses in the form of costly legal actions and resources.

Finally, the evidence at trial further established that defendant was motivated by intent to defraud and not innocent motives or "good faith."  Indeed, defendant received numerous rulings from judges who considered, among other things, defendant's "negative averments" and rejected same and issued a foreclosure judgment, a temporary restraining order and an injunction.  Likewise, he received numerous warnings from attorneys who considered defendant's papers including his "negative averment" and the purported "promissory note" of Denny Ray Harding and rejected same.  Finally, defendant received a

11

warning from the Ulster County Clerk who told defendant that his Maritime Liens naming individuals as vessels would not be accepted. Defendant, however, ignored the judicial rulings and warnings from others, and nevertheless made demands for money and filed false UCC liens when payments were not made.

In his motion, defendant makes a series of irrelevant statements, raises challenges to jurisdiction and other issues that are without merit and have previously been addressed by the Court, fails to recognize the legal requirement that, for purposes of this motion, the trial evidence must be construed in a light most favorable to the government, and fails to respect the factual determinations that have already been made by the trial jury. Defendant's claims are therefore without merit and the Court should reject his motion.

## CONCLUSION

In light of the foregoing, defendant's motion for judgment of acquittal and a new trial pursuant to Rules 29(c) and 33, respectively, should be denied, and a new trial is not warranted.

April 5, 2011                          Respectfully submitted,

                                       RICHARD S. HARTUNIAN
                                       United States Attorney
                                       Northern District of New York

                                  By:  /s/ Thomas A. Capezza

                                       Thomas A. Capezza
                                       Bar Roll No. 503159
                                       Assistant U.S. Attorney