Westlaw.

Page 1

75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.)))

H
This case was not selected for publication in the Federal Reporter.

**United States Court of Appeals,
Second Circuit.
UNITED STATES of America, Appellee,
v.
Kenneth Eugene SPEIGHT, Defendant-Appellant.**

No. 02-1342.
Aug. 28, 2003.

Defendant was convicted in the United States District Court for the Northern District of New York, David N. Hurd, J., of conspiracy to commit mail fraud, conspiracy to injure federal officers, and mail fraud, and he appealed. The Court of Appeals held that: (1) indictment was facially adequate; (2) there was sufficient evidence of defendant's intent to deceive and to cause harm; and (3) prosecutor's improper comments did not warrant reversal.

Affirmed.

West Headnotes

[1] Postal Service 306 €—48(4.2)

306 Postal Service
    306III Offenses Against Postal Laws
        306k48 Indictment or Information
            306k48(4) Use of Mails to Defraud
                306k48(4.2) k. Scheme or Artifice in General. Most Cited Cases
Indictment adequately charged federal inmate with mail fraud, despite inmate's contention that indictment did not allege "scheme to defraud" or "money or property," where indictment tracked language of statute and alleged that inmate intended to deceive federal officials involved in his conviction into believing that they owed him money and to obtain their money through false representations. 18 U.S.C.A. § 1341.

[2] Postal Service 306 €—49(11)

306 Postal Service
    306III Offenses Against Postal Laws
        306k49 Evidence
            306k49(8) Weight and Sufficiency
                306k49(11) k. Use of Mails to Defraud. Most Cited Cases
There was sufficient evidence of defendant's intent to deceive and to cause harm to support his conviction for mail fraud in connection with his attempts to convince federal law enforcement officials that they owed him multimillion dollar debts, despite defendant's contentions that he was making obviously fanciful claims that officials were free to reject, that he never sought to conceal his identity, and that he sought payments in good faith, in light of evidence that defendant devised scheme to trick officials into paying him at least nominal sums to terminate liens filed against their properties. 18 U.S.C.A. § 1341.

[3] Criminal Law 110 €—1171.2

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1171 Arguments and Conduct of Counsel
                110k1171.2 k. Opening Statement. Most Cited Cases
Prosecutor's improper use of first person during opening argument in describing meeting with defendant was not reversible error in mail fraud prosecution, even though defendant had sent fraudulent demands for money to prosecutor, where prosecutor clarified, after objection, that his use of "we" referred to United States of America, rather than to any personal knowledge he might have had.

[4] Criminal Law 110 €—1037.1(1)

110 Criminal Law

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.)))

110XXIV Review
    110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
        110XXIV(E)1 In General
            110k1037 Arguments and Conduct of Counsel
                110k1037.1 In General
                    110k1037.1(1) k. Arguments and Conduct in General. Most Cited Cases

Prosecutor's improper brandishing of unsigned lien-termination form during opening arguments in mail fraud prosecution was not plain error, in light of ample evidence that defendant had fraudulently levied liens against victims.

**[5] Constitutional Law 92 €⊃4690**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)5 Evidence and Witnesses
                92k4690 k. Vouching for Witnesses; Bolstering. Most Cited Cases
        (Formerly 92k268(8))

**Criminal Law 110 €⊃2098(5)**

110 Criminal Law
    110XXXI Counsel
        110XXXI(F) Arguments and Statements by Counsel
            110k2093 Comments on Evidence or Witnesses
                110k2098 Credibility and Character of Witnesses; Bolstering
                    110k2098(5) k. Credibility of Other Witnesses. Most Cited Cases
        (Formerly 110k720(5))

Prosecutor's improper statement during closing argument endorsing credibility of government witness did not deprive defendant of due process in mail fraud prosecution, where, when viewed against entire argument before jury, statement did not cause defendant substantial prejudice or deprive him of fair trial. U.S.C.A. Const.Amend. 5.

**[6] Witnesses 410 €⊃267**

410 Witnesses
    410III Examination
        410III(B) Cross-Examination
            410k267 k. Control and Discretion of Court. Most Cited Cases

District court did not abuse its discretion in mail fraud prosecution in allotting 30 minutes to each of pro se defendant's cross-examinations, where defendant's cross-examinations were often confused, and he interspersed his questioning with lengthy soliloquies.

**[7] Criminal Law 110 €⊃1042.3(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
            110XXIV(E)1 In General
                110k1042.3 Sentencing and Punishment
                    110k1042.3(1) k. In General. Most Cited Cases
        (Formerly 110k1042)

District court did not commit plain error in mail fraud prosecution in calculating intended loss based upon dollar amounts that defendant had fraudulently requested of various federal officials, even if actual loss from defendant's multibillion-dollar demands and liens was zero, where district court concluded that calculation dramatically overstated seriousness of offense and decided to downwardly depart from otherwise applicable Guideline range. U.S.S.G. § 2F1.1(b)(1), 18 U.S.C.A. (2000).

*803 Appeal from the **United States** District Court for the Northern District of New York (David N. Hurd, Judge).Elizabeth S. Riker, Assistant **United States** Attorney, (Craig A. Benedict, Assistant **United States** Attorney) for Glenn T. Suddaby, **United States** Attorney, Northern District of New York, Syracuse, NY, for Appellee.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.)))

Bruce R. Bryan, Syracuse, NY, for Defendant-Appellant.

Present: B.D. PARKER, Jr., RAGGI, Circuit Judges, and SWAIN, [FN*]District Judge.

> FN* The Honorable Laura Taylor Swain, **United States** District Court for the Southern District of New York, sitting by designation.

### SUMMARY ORDER

**\*\*1** UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the conviction and sentence of the District Court are AFFIRMED.

Defendant-appellant Kenneth Eugene **Speight** appeals from a judgment of the **United States** District Court for the Northern District of New York (David N. Hurd, *Judge*), following his conviction for conspiracy to commit mail fraud (18 U.S.C. § 371), conspiracy to injure federal officers (18 U.S.C. § 372), and three counts of mail fraud (18 U.S.C. § 1341). The Government's evidence demonstrated that while **Speight** was an inmate at the Federal Correctional Institution at Ray Brook, N.Y. he participated in a scheme using the mails to file fraudulent liens in amounts totaling many millions of dollars against the property of, among others, the Connecticut federal prosecutors and district court judge who were involved in the 1997 firearms conviction that led to his incarceration at Ray Brook. Following his conviction in the Northern District, **Speight** was sentenced principally to 72 months' imprisonment. On appeal, he challenges his conviction on numerous grounds, including the facial sufficiency of the substantive mail fraud counts of indictment, the adequacy of the government's proof of mail fraud, and various of the court's evidentiary rulings during trial.

To obtain a conviction under § 1341, the Government must prove, among other things, that a defendant "devised or intend[ed] to devise any scheme or artifice to \*804 defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341. **Speight** contends that his indictment did not allege a "scheme to defraud" or the "money or property" element of the mail fraud offense since a "scheme to defraud" requires "an intent to deceive *and* intent to cause actual harm." *United States v. Chandler*, 98 F.3d 711, 715 (2d Cir.1996) (internal quotation marks omitted and emphasis in original). We find no merit to this contention, which blurs the distinction between the facial sufficiency of the indictment and the adequacy of the government's proof at trial.

[1] Here, the indictment alleged that **Speight** mailed various federal officials numerous letters-with such titles as "Billing Statement," "Notice of Claim and Request for Payment," and "Notice of Default"-that falsely claimed that these officials owed him multimillion-dollar debts and, in some cases, filed liens against these officials when they did not pay. The indictment also alleged that these mailings and liens were designed to "obtain money" and "falsely and fraudulently establish [his victims'] indebtedness." (Indictment at 4-5.) As such, the indictment, which tracks the language of the statute, sufficiently alleged that **Speight** intended to deceive these officials into believing that they owed him money and to obtain their money through false representations. *See United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir.) ("In order to state an offense, an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, ... state time and place in appropriate terms." (internal quotation marks omitted)). Accordingly, **Speight's** challenge to the facial sufficiency of the indictment fails.

**\*\*2 Speight** also challenges the adequacy of the Government's proof at trial of mail fraud. In particular, **Speight** contends that no evidence was adduced that he intended to deceive or to cause

Page 4

75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.)))

harm. In addition, he contends that the Government's theory at trial was that the fraudulent liens merely risked the credit ratings of the federal officials whom he targeted and that this risk does not equate to an attempt to obtain money or property necessary for conviction under § 1341. *See, e.g., Porcelli v. United States,* 303 F.3d 452, 457 n. 1 (2d Cir.2002) (noting that mail fraud statute "require[s] a scheme aimed against the monetary or property interests of the victim").

[2] The evidence adduced at trial, when viewed in the light most favorable to the Government, *see United States v. Valenti,* 60 F.3d 941, 945 (2d Cir.1995), showed that **Speight**, using the mails, devised and implemented a plan to trick federal officials into believing that they owed him millions of dollars so that they would pay him-even if only modest amounts-to terminate the liens. **Speight**, on the other hand, contends that he was making obviously fanciful claims which these officials were free to reject, that he never sought to conceal his identity, and that he sought these payments in "good faith." Whether **Speight** acted with innocent motives or with fraudulent intent was for the jury. Since the jury credited the government's proof of motive and rejected **Speight's** explanations of his conduct, his challenge to the verdict on this ground fails.

A more difficult question is whether one's credit rating qualifies as "money or property" under § 1341. *See, e.g., United States v. Walker,* 191 F.3d 326, 335 (2d Cir.1999) (noting that "money or property," under the mail fraud statute, can include intangibles); *United States v. Dinome,* 86 F.3d 277, 280, 284 (2d Cir.1996) *805 (recognizing that property, under the mail fraud statute, includes the right to control one's assets). We need not reach this issue since the government's proof at trial also established that **Speight** intended that the subjects of the fraudulent liens might at some point make nominal payments to him to extinguish the liens and that he hoped at some point to sell the liens at a discount to off-shore financial institutions. Although neither occurred, this proof was nonetheless sufficient to establish that **Speight** violated § 1341 through his efforts to obtain the money of others through fraudulent means. In *United States v. Wallach,* 935 F.2d 445, 461 (2d Cir.1991), we held that "although money or property must be the object of the scheme, the government is not required to show that the intended victim was actually defrauded. The government need only show that the defendants contemplated some actual harm or injury." (internal citation omitted). Here, the Government offered sufficient evidence of intended harm to support **Speight's** conviction for mail fraud.

[3] As the Government concedes, it made mistakes during its arguments. During the Government's opening statement, the prosecuting attorney, to whom **Speight** had also sent demands for money, used the first-person when describing a meeting with **Speight** that the prosecutor had attended. **Speight** objected, and-although the court in effect overruled the objection-the prosecutor sufficiently clarified that his use of "we" referred to the **United States** of America, rather than to any personal knowledge he might have. We find these curative steps to have been sufficient.

**3 [4] Toward the end of his opening statement, the prosecutor brandished an unsigned lien-termination form, challenged **Speight** to sign it, and left it on the podium, where **Speight**, acting *pro se,* was to deliver his opening statement. Moreover, during summation, the prosecutor improperly endorsed the credibility of a Government witness-a fellow assistant **United States** attorney. **Speight** did not object to either of these statements. "In the absence of a timely objection at trial, defendant must show that the statements were so substantially prejudicial as to constitute 'flagrant abuse.'" *United States v. Russo,* 302 F.3d 37, 47 (2d Cir.2002) (quoting *United States v. Germosen,* 139 F.3d 120, 128 (2d Cir.1998)). We find no such abuse. The Government's use of the lien-termination form during its opening argument may have constituted error but, given the ample evidence that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.)))

Speight had levied the liens against the federal officials in question, the use of the form did not affect the outcome of the District Court's proceedings and, as such, did not constitute flagrant abuse.

[5] Turning to the Government's closing argument, "[a] prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant substantial prejudice." *United States v. Salameh,* 152 F.3d 88, 133 (2d Cir.1998) (internal quotation marks omitted). We find that the Government's expression of a personal opinion may have been improper but, when "viewed against the entire argument before the jury," *Germosen,* 139 F.3d at 128, did not cause Speight substantial prejudice or deprive him of a fair trial.

Speight also contests an October 25, 2001 court order that was prompted by his request to obtain those personal legal papers he contended were necessary for the preparation of his defense that he had left behind in FCI Ray Brook at the time of his transfer to another correctional institution. The order would have allowed the Government to go through his voluminous *806 personal papers at Ray Brook and forward him those documents that were relevant to his defense. Before the Government could begin searching, however, the order required Speight to provide the Government with a list of the specific documents that he needed. Speight never gave the Government this list, and the Government never examined his papers pursuant to the order. As the court's order was never carried out, there was no prejudice to him and certainly no reversible error.

[6] Speight also disputes the restrictions that the District Court placed on his cross-examinations. A district court has "wide latitude" in setting the scope of cross-examination, based on concerns for the potential for harassment, prejudice, confusion of issues, repetition, and irrelevance. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). As the record demonstrates, Speight's pro se cross-examinations were often confused, and he interspersed his questioning with lengthy soliloquies. The court's decision to allot 30 minutes to each of Speight's cross-examinations was well within its discretion.

**4 [7] Finally, Speight challenges the District Court's calculation of loss for sentencing purposes. The court adopted the Presentence Report's recommendation that the actual loss caused by Speight's scheme was zero but the intended loss was over $80 million, based upon the aggregate amount that Speight had demanded from officials. U.S.S.G. § 2F1.1(b)(1) (2000) suggests an 18-level enhancement for such an intended loss, which would have given Speight a Guideline range of imprisonment of 188-235 months. Note 11 to that Guideline states, however:

> In a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense. This may occur, for example, where a defendant attempted to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it. In such cases, a downward departure may be warranted.

After noting the multibillion-dollar amounts of Speight's demands and liens, the District Court departed downwards from the guideline range stating that "the intended loss dramatically overstates the seriousness of the offense." (Sentencing Tr. at 19.) The court sentenced Speight to a total term of imprisonment of 72 months, less than half of his Guideline range. Speight contends that the District Court erred in not determining the intended loss to be zero. "[I]ssues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of plain errors or defects affecting substantial rights." *United States v. Keppler,* 2 F.3d 21, 23 (2d Cir.1993) (internal quotation marks omitted). Since this objection was not raised in District Court, it is waived, absent plain error.
  To establish plain error, a court must find 1) an error, 2) that is plain, 3) that affects substantial rights.... If an error meets these first three re-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.)))

Page 6

quirements, the Court engages in a fourth consideration: whether or not to exercise its discretion to correct the error. The plain error should be corrected only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Keigue,* 318 F.3d 437, 441-42 (2d Cir.2003) (internal citations and quotation marks omitted). **Speight** has failed to demonstrate that the District Court committed plain error in calculating the intended loss based upon the dollar amounts that **Speight** himself had requested of various federal officials. Certainly any hypothetical error would not have affected the fairness and integrity of *807 the proceedings in light of the District Court's conclusion that this calculation "dramatically overstates the seriousness of the offense" and its decision to downwardly depart from the otherwise applicable Guideline range.

We have considered **Speight's** other contentions and find them to be without merit. Accordingly, we AFFIRM the District Court's judgment.

C.A.2 (N.Y.),2003.
U.S. v. Speight
75 Fed.Appx. 802, 2003 WL 22025322 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.