Refused for Causes: No original "Jurisdiction"; "UNITED STATES OF AMERICA" [SIC] is a bogus corporation; not a proper Party" (Presentation); violates Mr. Dade Act for willful misfilling for lacking and 28 U.S.C. 1691 official seal; violates official signature; Court's (see attached) and Clerk is attached)

(R/S)

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

OCT 2 7 2010

LAWRENCE K. BAERMAN, CLERK
ALBANY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*********************************

UNITED STATES OF AMERICA,

v.

RICHARD ENRIQUE ULLOA,

Defendant.

Criminal Action No.
10-CR-321 (TJM)

SUPERSEDING INDICTMENT

VIO: 18 U.S.C. §§ 1341 and 1349

Seven Felony Counts

*********************************

THE GRAND JURY CHARGES:

COUNTS ONE THROUGH SEVEN

(18 U.S.C. § 1341 – MAIL FRAUD)

INTRODUCTION

1. For the relevant period of this indictment, defendant RICHARD ENRIQUE ULLOA was a resident of the Northern District of New York.

THE LIEN SCHEME

2. From in or about June 2009, and continuing until on or about at least February 2010, within the Northern District of New York, defendant RICHARD ENRIQUE ULLOA, with the intent to defraud, devised and intended to devise a scheme or artifice to defraud, and for obtaining money and property by means of materially false or fraudulent pretenses,

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

OCT 2 7 2010

LAWRENCE K. BAERMAN, CLERK
ALBANY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

*******************************

UNITED STATES OF AMERICA,

v.

RICHARD ENRIQUE ULLOA,

Defendant.

*******************************

**Criminal Action No.**
**10-CR-321 (TJM)**

**SUPERSEDING INDICTMENT**

**VIO:   18 U.S.C. §§ 1341 and 1349**

**Seven Felony Counts**

**THE GRAND JURY CHARGES:**

**COUNTS ONE THROUGH SEVEN**

**(18 U.S.C. § 1341 – MAIL FRAUD)**

**INTRODUCTION**

1.      For the relevant period of this indictment, defendant RICHARD ENRIQUE ULLOA
was a resident of the Northern District of New York.

**THE LIEN SCHEME**

2.      From in or about June 2009, and continuing until on or about at least February
2010, within the Northern District of New York, defendant RICHARD ENRIQUE ULLOA, with
the intent to defraud, devised and intended to devise a scheme or artifice to defraud, and for
obtaining money and property by means of materially false or fraudulent pretenses,



representations and/or promises, to wit: defendant directed false and fraudulent efforts against officials of Ulster County, executives of Mid-Hudson Valley Federal Credit Union ("MHVFCU"), and Wells Fargo Bank, N.A. ("Wells Fargo") who displeased him in one manner or another, to obtain money and to falsely and fraudulently keep the rightful owners of such money from freely controlling their funds, through the making of documents and the filing of liens intended to create indebtedness purportedly under the Uniform Commercial Code."

### DESCRIPTION OF THE LIEN SCHEME

3.      On or about May 13, 2009, defendant RICHARD ENRIQUE ULLOA was pulled over by a police officer ("Police Officer"), whose name is known to the grand jury, for the Town of Rosendale, Ulster County.  As a result of that traffic stop, defendant was issued two traffic tickets.  The traffic tickets required an appearance in Rosendale Town Court where a Town Justice whose name is known to the grand jury presides.

4.      On June 2, 2009, defendant RICHARD ENRIQUE ULLOA appeared before said Town Justice who set bail in the amount of $10,000 due, in part, to the defendant's failure to provide identification.

5.      Shortly thereafter, defendant RICHARD ENRIQUE ULLOA started to accuse said officials of kidnaping him and began drafting, mailing and filing various documents purporting to be legal in nature, including "invoices," complaints, judgments, "Notice of Final Determination and Judgment Nihil Dicit," and "liens."

6.      Specifically, on or about June 4, 2009, defendant RICHARD ENRIQUE ULLOA sent to said Town Justice a "Criminal Complaint," which included a fraudulent "invoice."  The invoice stated: "demanding payment of $8,260,750.00 (eight million, two hundred sixty thousand, seven hundred fifty six dollars) for damages due to your lack of non response to the

representations and promises, to wit: defendant directed false and fraudulent efforts against

officials of Ulster County, executives of Mid-Hudson Valley Federal Credit Union

("MHVFCU"), and Wells Fargo Bank, N.A. ("Wells Fargo") who displeased him in one manner

or another, to obtain money and to falsely and fraudulently keep the rightful owners of such

money from freely controlling their funds, through the mailing of documents and the filing of

liens intended to create indebtedness purportedly under the Uniform Commercial Code.

## DESCRIPTION OF THE LIEN SCHEME

3.      On or about May 13, 2009, defendant RICHARD ENRIQUE ULLOA was pulled

over by a police officer ("Police Officer"), whose name is known to the grand jury, for the Town

of Rosendale, Ulster County.  As a result of that traffic stop, defendant was issued two traffic

tickets.  The traffic tickets required an appearance in Rosendale Town Court where a Town

Justice, whose name is know to the grand jury, presides.

4.      On June 2, 2009, defendant RICHARD ENRIQUE ULLOA appeared before said

Town Justice who set bail in the amount of $10,000 due, in part, to the defendant's failure to

provide identification.

5.      Shortly thereafter, defendant RICHARD ENRIQUE ULLOA started to accuse

said officials of kidnaping him and began drafting, mailing and filing various documents

purporting to be legal in nature, including "invoices," complaints, judgments, "Notice of Final

Determination and Judgment Nihil Dicit," and "liens."

6.      Specifically, on or about June 4, 2009, defendant RICHARD ENRIQUE ULLOA

sent to said Town Justice a "Criminal Complaint," which included a fraudulent "invoice."  The

invoice stated: "demanding payment of $8,260,750.00 (eight million, two hundred sixty

thousand, seven hundred fifty silver dollars) for damages due to your lack of non response to the



Criminal Complaint, Opportunity to Cure, and Counterclaim. Your failure to respond within the time limit made this self executing confession of judgment. You received notification and Full Disclosure which made this a legally binding contract. The claim translated into United States Federal Reserve notes is 20 times the silver amount, which is (minus interest and penalties) $165,215,000 (One hundred sixty five million, two hundred fifteen thousand USD)." The document was sent utilizing United States Postal Service (USPS) certified mail.

7.      On or about September 11, 2009, defendant RICHARD ENRIQUE ULLOA sent a document entitled "Notice of Final Determination and Judgment Nihil Dicit" to the Town of Rosendale and said Town Justice. The document was sent utilizing USPS certified mail. In this document, defendant gave a factual summary of the March through August 2009, events surrounding the traffic stop, court proceedings and his detention. For example, the document stated, among other things, "I was kidnapped and held against my will for approximately 3 days. I notified [Town Justice] that I was not a citizen under their jurisdiction and I had not committed any crimes. I was arrested without a lawful 4th amendment warrant, and was held for a ransom of ten thousand [$10,000.00] Federal Reserve notes." The "Notice of Final Determination and Judgment Nihil Dicit" also stated: "THIS IS THE FINAL NOTIFICATION AND JUDGEMENT NO OTHER NOTIFICATIONS WILL BE SENT TO YOU. COLLECTION OF THIS LAWFUL CLAIM, AGAINST YOUR BONDS, INSURANCE POLICIES, 401-K, CAFR FUNDS, PROPERTIES, OR ANY SOURCE OF REVENUE TO CURE YOUR DISHONOR IN THE PUBLIC WILL BEGIN IN THREE BUSINESS DAYS IF THIS CLAIM IS NOT PAID IN FULL. ADDITIONAL CIVIL DAMAGES AND CRIMINAL CHARGES MAY ALSO BE FORTHCOMING. NON-RESPONSE IS A SELF EXECUTING POWER OF ATTORNEY TO FILE LIENS AND ENCUMBRANCES AGAINST ANY AND ALL PROPERTY OF THE

Criminal Complaint, Opportunity to Cure, and Counterclaim. Your failure to respond within the time limit made this a self executing confession of judgment. You received notification and Full Disclosure which made this a legally binding contract. The claim translated into United States Federal Reserve notes is 20 times the silver amount, which is (minus interest and penalties) $165,215,000 (One hundred sixty-five million, two hundred fifteen thousand USD)." The document was sent utilizing United States Postal Service (USPS) certified mail.

7.      On or about September 11, 2009, defendant RICHARD ENRIQUE ULLOA sent a document entitled "Notice of Final Determination and Judgment Nihil Dicit" to the Town of Rosendale and said Town Justice. The document was sent utilizing USPS certified mail. In this document, defendant gave a factual summary of the May through August 2009, events surrounding the traffic stop, court proceedings and his detention. For example, the document stated, among other things, "I was kidnaped and held against my will for approximately 3 days. I notified [Town Justice] that I was not a citizen under their jurisdiction and I had not committed any crimes. I was arrested without a lawful 4th amendment warrant, and was held for a ransom of ten thousand [$10,000.00] Federal Reserve notes." The "Notice of Final Determination and Judgment Nihil Dicit" also stated: "THIS IS THE FINAL NOTIFICATION AND JUDGEMENT NO OTHER NOTIFICATIONS WILL BE SENT TO YOU. COLLECTION OF THIS LAWFUL CLAIM, AGAINST YOUR BONDS, INSURANCE POLICIES, 801-K, CAFR FUNDS, PROPERTIES, OR ANY SOURCE OF REVENUE TO CURE YOUR DISHONOR IN THE PUBLIC WILL BEGIN IN THREE BUSINESS DAYS IF THIS CLAIM IS NOT PAID IN FULL. ADDITIONAL CIVIL DAMAGES AND CRIMINAL CHARGES MAY ALSO BE FORTHCOMING. NON RESPONSE IS A SELF EXECUTING POWER OF ATTORNEY TO FILE LIENS AND ENCUMBRANCES AGAINST ANY AND ALL PROPERTY OF THE



LIBELLEES AND THEIR PARENT COMPANY OR COMPANIES." The "Notice of Final Determination and Judgment Nihil Dicit" also included a section entitled: CERTIFICATE OF NON-RESPONSE. In this section, defendant itemized prior mailings including USPS tracking numbers to the Town of Rosendale and town officials demanding payment pursuant to purported "Commercial Claims."

8.     On or about September 24, 2009, defendant RICHARD ENRIQUE ULLOA caused the filing of a lien against said Town Justice with the Washington State Department of Licensing, falsely and fraudulently asserting via the lien that the Town Justice owed RICHARD ENRIQUE ULLOA $552,513.00.

9.     On or about September 24, 2009, defendant RICHARD ENRIQUE ULLOA caused the filing of a lien against said Police Officer with the Washington State Department of Licensing, falsely and fraudulently asserting via the lien that said Police Officer owed RICHARD ENRIQUE ULLOA $552,511,000.00.

10.    Also beginning in or about September 2009, the exact dates unknown, defendant RICHARD ENRIQUE ULLOA began to direct similar false and fraudulent efforts against other officials of Ulster County who displeased him in one manner or another to obtain money and to falsely and fraudulently keep the rightful owners of such money from freely controlling their funds, through the mailing of documents and the filing of liens intended to create indebtedness purportedly under the Uniform Commercial Code.

11.    By December 2009, defendant RICHARD ENRIQUE ULLOA had fallen in arrears on a mortgage held by Mid-Hudson Valley Federal Credit Union ("MHVFCU"). By written agreement of the parties, MHVFCU collected the amount in arrears from defendant's savings account at MHVFCU. MHVFCU subsequently began foreclosure proceedings against

LIBELLEES AND THEIR PARENT COMPANY OR COMPANIES." The "Notice of Final
Determination and Judgment Nihil Dicit" also included a section entitled: CERTIFICATE OF
NON RESPONSE. In this section, defendant itemized prior mailings (including USPS tracking
numbers) to the Town of Rosendale and town officials demanding payment pursuant to purported
"Commercial Claims."

8.     On or about September 24, 2009, defendant RICHARD ENRIQUE ULLOA
caused the filing of a lien against said Town Justice with the Washington State Department of
Licensing, falsely and fraudulently asserting via the lien that the Town Justice owed RICHARD
ENRIQUE ULLOA $552,513,000.00.

9.     On or about September 24, 2009, defendant RICHARD ENRIQUE ULLOA
caused the filing of a lien against said Police Officer with the Washington State Department of
Licensing, falsely and fraudulently asserting via the lien that said Police Officer owed RICHARD
ENRIQUE ULLOA $552,513,000.00.

10.     Also beginning in or about September 2009, the exact dates unknown, defendant
RICHARD ENRIQUE ULLOA began to direct similar false and fraudulent efforts against other
officials of Ulster County who displeased him in one manner or another to obtain money and to
falsely and fraudulently keep the rightful owners of such money from freely controlling their
funds, through the mailing of documents and the filing of liens intended to create indebtedness
purportedly under the Uniform Commercial Code.

11.     By December 2008, defendant RICHARD ENRIQUE ULLOA had fallen in
arrears on a mortgage held by Mid-Hudson Valley Federal Credit Union ("MHVFCU"). By
written agreement of the parties, MHVFCU collected the amount in arrears from defendant's
savings account at MHVFCU. MHVFCU subsequently began foreclosure proceedings against



the subject prope___ aft__ __efend__t had again fallen in arrears.

12. __efendant RICHARD EN__QUE ULL__A sent written __rrespondence to MHVFCU __ncludin__ numerous Bil__ fo__ D__mag__. For example, on __r about March 2, 20__ de__dant sen__ a Bill For Dam__g__ t__roug__ the USPS to M__FCU for the alleged violati__ of a __Notice __ Cea__, Desi__ and Quit,__ with a bill to__ing $__,000,000.

13. On or a__t O__ober 6, 20__9, defendan__ RICHARD ENR__UE ULL__A caused __ the filing of a __en __ains__ an executive of M__HVFCU __ose name is know__ __o __e grand jury, wi__ the Washingto__ State Departme__ __icensing, falsely and fraud__ly asserting via the __ien __at __e executive owed RI__HA__D ENRIQUE ULL__A $__,0__0,000,000.00.

14. Also on or ab__ut October 6, 2009, __fe__t RICHARD ENRIQUE ULLOA __rected similar fa__e __ fraudulent efforts agai__ __ther e__ecutives of MHVFCU who displeased hi__ in one ma__r or an__ther to __b__in money and to falsely and __audulen__y keep the rightful __w__ers of such m__ __ fr__ __eely co__rolling their funds __hrough the mailing of documents and the filing of liens i__en__d to create indebt__dness purportedly __nder the Uniform __mmercial Code.

15. On __ about November 24, 2009, __efendant RIC__RD ENRIQUE __LLOA __ought to foresta__ __ __coming foreclosure a__ion and __sed the fil__g of a lien identifying __imsel__ RI__HA__D ENRIQUE ULLOA, a__ a "Sec__red Party (natural living man) [who] ha__ both a __aramoun__ __laim to all Collateral held __nder any c__mm__cial accounts of the Legal Fi__ion aka RIC__ARD ENRIQUE ULLOA, and the __urisdictional Control over the Legal Fic__on aka RICHARD ENRIQUE ULLOA." Said U__C lien, filed with the New York State Department of State, included an "Attachment __ __ Prope__ List" that identif__d approximately one hundred and nineteen properties, including the real property that was the subject of the MHVFCU matter,

Refused for Cause (see all attached) no original attached (RTS)

the subject property after defendant had again fallen in arrears.

12.     Defendant RICHARD ENRIQUE ULLOA sent written correspondence to

MHVFCU including numerous Bills for Damage. For example, on or about March 2, 2009,

defendant sent a Bill For Damages through the USPS to MHVFCU for the alleged violation of a

"Notice to Cease, Desist, and Quit," with a bill totaling $46,000,000.

13.     On or about October 6, 2009, defendant RICHARD ENRIQUE ULLOA caused

the filing of a lien against an executive of MHVFCU, whose name is known to the grand jury,

with the Washington State Department of Licensing, falsely and fraudulently asserting via the

lien that the executive owed RICHARD ENRIQUE ULLOA $2,820,000,000.00.

14.     Also on or about October 6, 2009, defendant RICHARD ENRIQUE ULLOA

directed similar false and fraudulent efforts against other executives of MHVFCU who

displeased him in one manner or another to obtain money and to falsely and fraudulently keep the

rightful owners of such money from freely controlling their funds, through the mailing of

documents and the filing of liens intended to create indebtedness purportedly under the Uniform

Commercial Code.

15.     On or about November 24, 2009, defendant RICHARD ENRIQUE ULLOA

sought to forestall an upcoming foreclosure action and caused the filing of a lien identifying

himself, RICHARD ENRIQUE ULLOA, as a "Secured Party (natural living man) [who] has both

a paramount claim to all Collateral held under any commercial accounts of the Legal Fiction aka

RICHARD ENRIQUE ULLOA, and the Jurisdictional Control over the Legal Fiction aka

RICHARD ENRIQUE ULLOA." Said UCC lien, filed with the New York State Department of

State, included an "Attachment 'A' – Property List" that identified approximately one hundred

and nineteen properties, including the real property that was the subject of the MHVFCU matter,



as referenced in ¶ 11 above as "protected."

16.    On February 12, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a lien against an executive of MHVFCU, whose name is known to the grand jury, with the New York State Department of State, falsely and fraudulently asserting via the lien that the executive owed RICHARD ENRIQUE ULLOA $2,820,000,000.00.

17.    On February 12, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a UCC Financing Statement regarding MHVFCU, with the New York State Department of State, that falsely and fraudulently asserted via the UCC Financing Statement that a financial interest of MHVFCU in the amount of $6,912.50 had been discharged by a promissory note, an alleged copy of which was attached to the UCC Financing Statement.

18.    On February 12, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a UCC Financing Statement regarding Wells Fargo Bank, N.A. ("Wells Fargo"), with the New York State Department of State, that falsely and fraudulently asserted via the UCC Financing Statement that a mortgage held by Wells Fargo in the amount of $183,643.56 had been discharged by a promissory note, an alleged copy of which was attached to the UCC Financing Statement.

19.    On February 13, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a UCC Financing Statement regarding Wells Fargo, with the New York State Department of State, that falsely and fraudulently asserted via the UCC Financing Statement that a mortgage held by Wells Fargo in the amount of $183,643.56 had been satisfied by assignment of a promissory note to counsel for Wells Fargo.

## EXECUTION OF THE LIEN SCHEME

20.    On or about the dates listed below, for the purpose of executing, and attempting to

as referenced in ¶ 11 above, as "protected."

16.     On February 12, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a lien against an executive of MHVFCU, whose name is known to the grand jury, with the New York State Department of State, falsely and fraudulently asserting via the lien that the executive owed RICHARD ENRIQUE ULLOA $2,820,000,000.00.

17.     On February 12, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a UCC Financing Statement regarding MHVFCU, with the New York State Department of State, that falsely and fraudulently asserted via the UCC Financing Statement that a financial interest of MHVFCU in the amount of $6,912.50 had been discharged by a promissory note, an alleged copy of which was attached to the UCC Financing Statement.

18.     On February 12, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a UCC Financing Statement regarding Wells Fargo Bank, N.A. ("Wells Fargo"), with the New York State Department of State, that falsely and fraudulently asserted via the UCC Financing Statement that a mortgage held by Wells Fargo in the amount of $183,043.56 had been discharged by a promissory note, an alleged copy of which was attached to the UCC Financing Statement.

19.     On February 13, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a UCC Financing Statement regarding Wells Fargo, with the New York State Department of State, that falsely and fraudulently asserted via the UCC Financing Statement that a mortgage held by Wells Fargo in the amount of $183,043.56 had been satisfied by assignment of a promissory note to counsel for Wells Fargo.

## EXECUTION OF THE LIEN SCHEME

20.     On or about the dates listed below, for the purpose of executing, and attempting to



execute, the above-described scheme and artifice, defendant RICHARD ENRIQUE ULLOA knowingly did place in any post office or authorized depository for mail matter, any matter or thing whatever to be sent and delivered by the Postal Service, and did cause to be delivered by mail according to the direction thereon the following liens against the aforesaid individuals, each such mailing constituting a separate count of this indictment:

| Count | Date | Amount | Location Filed | Purported Debtor |
|-------|------|--------|----------------|------------------|
| One | 09/24/2009 | $552,513,000.00 | Washington State Department of Licensing | Town Justice |
| Two | 09/24/2009 | $552,513,000.00 | Washington State Department of Licensing | Police Officer |
| Three | 10/06/2009 | $2,820,000,000.00. | Washington State Department of Licensing | Executive of MHVFCU |
| Four | 02/11/2010 | $2,820,000,000.00. | New York State Secretary of State | Executive of MHVFCU |
| Five | 02/12/2010 | $6,912,5__ | New York State Secretary of State | MVFCU |
| Six | 02/12/2010 | $183,043.56 | New York State Secretary of State | Wells Fargo Bank, N.A. |
| Seven | 02/13/2010 | $183,043.56 | New York State Secretary of State | Counsel to Wells Fargo Bank, N.A. |

(All in violation of Title 18, United States Code, Sections 1341, 1349 and Section 2)

Refused for Cause / no original / (see all attached) RTS

execute, the above-described scheme and artifice, defendant RICHARD ENRIQUE ULLOA

knowingly did place in any post office or authorized depository for mail matter, any matter or

thing whatever to be sent and delivered by the Postal Service, and did cause to be delivered by

mail according to the direction thereon the following liens against the aforesaid individuals, each

such mailing constituting a separate count of this Indictment:

| Count | Date | Amount | Location Filed | Purported Debtor |
|-------|------|--------|----------------|------------------|
| One | 09/24/2009 | $552,513,000.00 | Washington State Department of Licensing | Town Justice |
| Two | 09/24/2009 | $552,513,000.00 | Washington State Department of Licensing | Police Officer |
| Three | 10/06/2009 | $2,820,000,000.00. | Washington State Department of Licensing | Executive of MHVFCU |
| Four | 02/12/2010 | $2,820,000,000.00. | New York State Secretary of State | Executive of MHVFCU |
| Five | 02/12/2010 | $6,912.50 | New York State Secretary of State | MVFCU |
| Six | 02/12/2010 | $183,043.56 | New York State Secretary of State | Wells Fargo Bank, N.A. |
| Seven | 02/13/2010 | $183,043.56 | New York State Secretary of State | Counsel to Wells Fargo Bank, N.A. |

**(All in violation of Title 18, United States Code, Sections 1341, 1349 and Section 2)**





A TRUE BILL

Dated: October 27, 2010

FOREPERSON OF THE GRAND JURY

RICHARD S. HARTUNIAN
United States Attorney

By _____
Thomas A. Capezza
Assistant U.S. Attorney
Bar Roll No. 503569

Refused for Causes: no original jurisdiction (see all attached)

RTS

A TRUE BILL

Dated: October 27, 2010

FOREPERSON OF THE GRAND JURY

RICHARD S. HARTUNIAN
United States Attorney

By:

Thomas A. Capezza
Assistant U.S. Attorney
Bar Roll No. 503159





IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************

UNITED STATES OF AMERICA

v.

RICHARD ENRIQUE ULLOA,

Defendant.

*******************************

Criminal Action No.
: 10-CR- 321 (TJM)

INDICTMENT

VIO:  18 U.S.C. §§ 1341 and 1349

Four Felony Counts

THE GRAND JURY CHARGES:

COUNTS ONE THROUGH FOUR
(18 U.S.C. § 1341 (MAIL FRAUD)

INTRODUCTION

1.    For the relevant period of this indictment, defendant RICHARD ENRIQUE
ULLOA was a resident of the Northern District of New York.

THE LIEN SCHEME

2.    From in or about June 2009, and continuing until on or about at least
February 2010, within the Northern District of New York, defendant RICHARD
ENRIQUE ULLOA, with the intent to defraud, devised and intended to devise a scheme or

[Handwritten annotations overlaid across page:]
Refused
for Causes:
"UNITED STATES OF AMERICA" [sic]
is a bogus corporation
not a proper Party;
"UNITED STATES OF AMERICA"
is a bogus corporation
not a proper Party;
violates Misrepresentation;
willful misrepresentation
violates 28 U.S.C. 1691 for
lacking court's seal
and clerk's signature
(see attached)
RTS

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

JUN 1 8 2010

LAWRENCE K. BAERMAN, CLERK
ALBANY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

*********************************

UNITED STATES OF AMERICA,

v.

RICHARD ENRIQUE ULLOA,

Defendant.

*********************************

Criminal Action No.
I: 10-CR- 321 (TJM)

### INDICTMENT

VIO:  18 U.S.C. §§ 1341and 1349

**Four Felony Counts**

### THE GRAND JURY CHARGES:

### COUNTS ONE THROUGH FOUR

### (18 U.S.C. § 1341 – MAIL FRAUD)

### INTRODUCTION

1.      For the relevant period of this indictment, defendant RICHARD ENRIQUE

ULLOA was a resident of the Northern District of New York.

### THE LIEN SCHEME

2.      From in or about June 2009, and continuing until on or about at least

February 2010, within the Northern District of New York, defendant RICHARD

ENRIQUE ULLOA, with the intent to defraud, devised and intended to devise a scheme or



artifice to defraud, and for obtaining money and property by means of materially false or fraudulent pretenses, and representations and promises to wit: defendant directed false and fraudulent efforts against officials of Ulster County and executives of Mid-Hudson Valley Federal Credit Union ("MHVFCU") who displeased him in one manner or another, to obtain money and to falsely and fraudulently keep the rightful owners of such money from freely controlling their funds, through the mailing of documents and the filing of liens intended to create indebtedness purportedly under the Uniform Commercial Code.

## DESCRIPTION OF THE LIEN SCHEME

3.     On or about May 13, 2009, defendant RICHARD ENRIQUE ULLOA was pulled over by a police officer ("Police Officer"), whose name is known to the grand jury, for the Town of Rosendale, Ulster County. As a result of that traffic stop, defendant was issued two traffic tickets. The traffic tickets required an appearance in Rosendale Town Court where a Town Justice, whose name is know to the grand jury, presides.

4.     On June 2, 2009, defendant RICHARD ENRIQUE ULLOA appeared before said Town Justice who set bail in the amount of $10,000 due, in part, to the defendant's failure to provide identification.

5.     Shortly thereafter, defendant RICHARD ENRIQUE ULLOA started to accuse said officials of kidnaping him and began crafting, mailing and filing various documents purporting to be legal in nature, including "invoices," complaints, judgments, "Notice of Final Determination and Judgment Nihil Dicit," and "liens."

6.     Specifically, on or about June 4, 2009, defendant RICHARD ENRIQUE

artifice to defraud, and for obtaining money and property by means of materially false or

fraudulent pretenses, and representations and promises, to wit: defendant directed false and

fraudulent efforts against officials of Ulster County and executives of Mid-Hudson Valley

Federal Credit Union ("MHVFCU") who displeased him in one manner or another, to

obtain money and to falsely and fraudulently keep the rightful owners of such money

from freely controlling their funds, through the mailing of documents and the filing of

liens intended to create indebtedness purportedly under the Uniform Commercial Code.

### DESCRIPTION OF THE LIEN SCHEME

3.      On or about May 13, 2009, defendant RICHARD ENRIQUE ULLOA was

pulled over by a police officer ("Police Officer"), whose name is known to the grand jury,

for the Town of Rosendale, Ulster County. As a result of that traffic stop, defendant was

issued two traffic tickets. The traffic tickets required an appearance in Rosendale Town

Court where a Town Justice, whose name is know to the grand jury, presides.

4.      On June 2, 2009, defendant RICHARD ENRIQUE ULLOA appeared

before said Town Justice who set bail in the amount of $10,000 due, in part, to the

defendant's failure to provide identification.

5.      Shortly thereafter, defendant RICHARD ENRIQUE ULLOA started to

accuse said officials of kidnaping him and began drafting, mailing and filing various

documents purporting to be legal in nature, including "invoices," complaints, judgments,

"Notice of Final Determination and Judgment Nihil Dicit," and "liens."

6.      Specifically, on or about June 4, 2009, defendant RICHARD ENRIQUE



ULLOA sent to said Town Justice a "Criminal Complaint," which included a fraudulent

"invoice." The invoice stated, demanding payment of $8,260,750.00 (eight million, two

hundred sixty thousand, seven hundred fifty silver dollars) for damages due to your lack

of non response to the Criminal Complaint, Opportunity to Cure, and Counterclaim.

Your failure to respond within the time limit made this a self executing confession of

judgment. You received notification and Full Disclosure which made this a legally

binding contract. The claim translated into United States Federal Reserve notes is 20

times the silver amount, which is (minus interest and penalties) $165,215,000 (One

hundred sixty-five million, two hundred fifteen thousand USD)." The document was sent

utilizing United States Postal Service (USPS) certified mail.

     7.    On or about September 11, 2009, defendant RICHARD ENRIQUE ULLOA

sent a document entitled "Notice of Final Determination and Judgment Nihil Dicit" to the

Town of Rosendale and said Town Justice. The document was sent utilizing USPS

certified mail. In this document, defendant gave a factual summary of the May through

August 2009, events surrounding the traffic stop, court proceedings and his detention.

For example, the document stated, among other things, "I was kidnaped and held against

my will for approximately 3 days, I notified [Town Justice] that I was not a citizen under

their jurisdiction and I had not committed any crimes. I was arrested without a lawful 4th

amendment warrant and was held for a ransom of ten thousand [$10,000.00] Federal

Reserve notes." The "Notice of Final Determination and Judgment Nihil Dicit" also

stated: "THIS IS THE FINAL NOTIFICATION AND JUDGEMENT NO OTHER

ULLOA sent to said Town Justice a "Criminal Complaint," which included a fraudulent

"invoice." The invoice stated: "demanding payment of $8,260,750.00 (eight million, two

hundred sixty thousand, seven hundred fifty silver dollars) for damages due to your lack

of non response to the Criminal Complaint, Opportunity to Cure, and Counterclaim.

Your failure to respond within the time limit made this a self executing confession of

judgment. You received notification and Full Disclosure which made this a legally

binding contract. The claim translated into United States Federal Reserve notes is 20

times the silver amount, which is (minus interest and penalties) $165,215,000 (One

hundred sixty-five million, two hundred fifteen thousand USD)." The document was sent

utilizing United States Postal Service (USPS) certified mail.

     7.     On or about September 11, 2009, defendant RICHARD ENRIQUE ULLOA

sent a document entitled "Notice of Final Determination and Judgment Nihil Dicit" to the

Town of Rosendale and said Town Justice. The document was sent utilizing USPS

certified mail. In this document, defendant gave a factual summary of the May through

August 2009, events surrounding the traffic stop, court proceedings and his detention.

For example, the document stated, among other things, "I was kidnaped and held against

my will for approximately 3 days. I notified [Town Justice] that I was not a citizen under

their jurisdiction and I had not committed any crimes. I was arrested without a lawful 4th

amendment warrant, and was held for a ransom of ten thousand [$10,000.00] Federal

Reserve notes." The "Notice of Final Determination and Judgment Nihil Dicit" also

stated: "THIS IS THE FINAL NOTIFICATION AND JUDGEMENT NO OTHER



NOTIFICATIONS WILL BE SENT TO YOU.  COLLECTION OF THIS LAWFUL

CLAIM, AGAINST YOUR BONDS, INSURANCE POLICIES, 801-K, CAFR FUNDS,

PROPERTIES, OR ANY SOURCE OF REVENUE TO CURE YOUR DISHONOR IN

THE PUBLIC WILL BEGIN IN THREE BUSINESS DAYS IF THIS CLAIM IS NOT

PAID IN FULL.  ADDITIONAL CIVIL DAMAGES AND CRIMINAL CHARGES

MAY ALSO BE FORTHCOMING.  NON RESPONSE IS A SELF EXECUTING

POWER OF ATTORNEY TO FILE LIENS AND ENCUMBRANCES AGAINST ANY

AND ALL PROPERTY OF THE LIBELLEES AND THEIR PARENT COMPANY OR

COMPANIES."  The "Notice of Final Determination and Judgment Nihil Dicit" also

included a section entitled CERTIFICATE OF NON RESPONSE.  In this section,

defendant itemized prior mailings (including USPS tracking numbers) to the Town of

Rosendale and town officials demanding payment pursuant to purported "Commercial

Claims."

      8.    On or about September 14, 2009, defendant RICHARD ENRIQUE ULLOA

caused the filing of a lien against said Town Justice with the Washington State

Department of Licensing, falsely and fraudulently asserting via the lien that the Town

Justice owed RICHARD ENRIQUE ULLOA $552,513,000.00.

      9.    On or about September 24, 2009, defendant RICHARD ENRIQUE ULLOA

caused the filing of a lien against said Police Officer with the Washington State

Department of Licensing, falsely and fraudulently asserting via the lien that said Police

Officer owed RICHARD ENRIQUE ULLOA $552,513,000.00.

NOTIFICATIONS WILL BE SENT TO YOU. COLLECTION OF THIS LAWFUL

CLAIM, AGAINST YOUR BONDS, INSURANCE POLICIES, 801-K, CAFR FUNDS,

PROPERTIES, OR ANY SOURCE OF REVENUE TO CURE YOUR DISHONOR IN

THE PUBLIC WILL BEGIN IN THREE BUSINESS DAYS IF THIS CLAIM IS NOT

PAID IN FULL. ADDITIONAL CIVIL DAMAGES AND CRIMINAL CHARGES

MAY ALSO BE FORTHCOMING. NON RESPONSE IS A SELF EXECUTING

POWER OF ATTORNEY TO FILE LIENS AND ENCUMBRANCES AGAINST ANY

AND ALL PROPERTY OF THE LIBELLEES AND THEIR PARENT COMPANY OR

COMPANIES." The "Notice of Final Determination and Judgment Nihil Dicit" also

included a section entitled: CERTIFICATE OF NON RESPONSE. In this section,

defendant itemized prior mailings (including USPS tracking numbers) to the Town of

Rosendale and town officials demanding payment pursuant to purported "Commercial

Claims."

     8.     On or about September 24, 2009, defendant RICHARD ENRIQUE ULLOA

caused the filing of a lien against said Town Justice with the Washington State

Department of Licensing, falsely and fraudulently asserting via the lien that the Town

Justice owed RICHARD ENRIQUE ULLOA $552,513,000.00.

     9.     On or about September 24, 2009, defendant RICHARD ENRIQUE ULLOA

caused the filing of a lien against said Police Officer with the Washington State

Department of Licensing, falsely and fraudulently asserting via the lien that said Police

Officer owed RICHARD ENRIQUE ULLOA $552,513,000.00.



10.     Also beginning in or about September 2009, the exact dates unknown, defendant RICHARD ENRIQUE ULLOA began to direct similar false and fraudulent efforts against other officials of Ulster County who displeased him in one manner or another to obtain money and to falsely and fraudulently keep the rightful owners of such money from freely controlling their funds, through the mailing of documents and the filing of liens intended to create indebtedness purportedly under the Uniform Commercial Code.

11.     By December 2008, defendant RICHARD ENRIQUE ULLOA had fallen in arrears on a mortgage held by Mid-Hudson Valley Federal Credit Union ("MHVFCU"). By written agreement of the parties, MHVFCU collected the amount in arrears from defendant's savings account at MHVFCU.   MHVFCU subsequently began foreclosure proceedings against the subject property after defendant had again fallen in arrears.

12.     Defendant RICHARD ENRIQUE ULLOA sent written correspondence to MHVFCU including numerous Bills for Damage.  For example, on or about March 2, 2009, defendant sent a Bill For Damage through the USPS to MHVFCU for the alleged violation of a "Notice to Cease, Desist, and Quit," with a bill totaling $40,000,000.

13.     On or about October 6, 2009, defendant RICHARD ENRIQUE ULLOA caused the filing of a lien against an executive of MHVFCU, whose name is known to the grand jury, with the Washington State Department of Licensing, falsely and fraudulently asserting via the lien that the executive owed RICHARD ENRIQUE ULLOA $2,820,000,000.00.

10.     Also beginning in or about September 2009, the exact dates unknown, defendant RICHARD ENRIQUE ULLOA began to direct similar false and fraudulent efforts against other officials of Ulster County who displeased him in one manner or another to obtain money and to falsely and fraudulently keep the rightful owners of such money from freely controlling their funds, through the mailing of documents and the filing of liens intended to create indebtedness purportedly under the Uniform Commercial Code.

11.     By December 2008, defendant RICHARD ENRIQUE ULLOA had fallen in arrears on a mortgage held by Mid-Hudson Valley Federal Credit Union ("MHVFCU"). By written agreement of the parties, MHVFCU collected the amount in arrears from defendant's savings account at MHVFCU.  MHVFCU subsequently began foreclosure proceedings against the subject property after defendant had again fallen in arrears.

12.     Defendant RICHARD ENRIQUE ULLOA sent written correspondence to MHVFCU including numerous Bills for Damage.  For example, on or about March 2, 2009, defendant sent a Bill For Damages through the USPS to MHVFCU for the alleged violation of a "Notice to Cease, Desist, and Quit," with a bill totaling $46,000,000.

13.     On or about October 6, 2009, defendant RICHARD ENRIQUE ULLOA caused the filing of a lien against an executive of MHVFCU, whose name is known to the grand jury, with the Washington State Department of Licensing, falsely and fraudulently asserting via the lien that the executive owed RICHARD ENRIQUE ULLOA $2,820,000,000.00.



14. Also on or about October, 2009, defendant RICHARD ENRIQUE ULLOA directed similar false and fraudulent efforts against other executives of MHVFCU who displeased him in one manner or another to obtain money and to falsely and fraudulently keep the rightful owners of such money from freely controlling their funds, through the mailing of documents and the filing of liens intended to create indebtedness purportedly under the Uniform Commercial Code.

15. On February 12, 2010, defendant RICHARD ENRIQUE ULLOA caused the filing of a lien against an executive of MHVFCU, whose name is known to the grand jury, with the New York State Department of State, falsely and fraudulently asserting via the lien that the executive owed RICHARD ENRIQUE ULLOA $2,820,000,000.00.

## EXECUTION OF THE LIEN SCHEME

16. On or about the dates listed below, for the purpose of executing, and attempting to execute, the above-described scheme and artifice, defendant RICHARD ENRIQUE ULLOA knowingly did place in any post office or authorized depository for mail matter, any matter or thing whatever to be sent and delivered by the Postal Service, and did cause to be delivered by mail according to the direction thereon the following liens against the aforesaid individuals, each

14.     Also on or about October 6, 2009, defendant RICHARD ENRIQUE

ULLOA directed similar false and fraudulent efforts against other executives of

MHVFCU who displeased him in one manner or another to obtain money and to falsely

and fraudulently keep the rightful owners of such money from freely controlling their

funds, through the mailing of documents and the filing of liens intended to create

indebtedness purportedly under the Uniform Commercial Code.

15.     On February 12, 2010, defendant RICHARD ENRIQUE ULLOA caused

the filing of a lien against an executive of MHVFCU, whose name is known to the grand

jury, with the New York State Department of State, falsely and fraudulently asserting via

the lien that the executive owed RICHARD ENRIQUE ULLOA $2,820,000,000.00.

### EXECUTION OF THE LIEN SCHEME

16.     On or about the dates listed below, for the purpose of executing, and attempting to

execute, the above-described scheme and artifice, defendant RICHARD ENRIQUE ULLOA

knowingly did place in any post office or authorized depository for mail matter, any matter or

thing whatever to be sent and delivered by the Postal Service, and did cause to be delivered by

mail according to the direction thereon the following liens against the aforesaid individuals, each



such mailing constituting a separate count of this indictment:

| Count | Date | Lien Amount | Location Filed | Purported Debtor |
|-------|------|-------------|----------------|------------------|
| One | 09/24/2009 | $552,513,000.00 | Washington State Department of Licensing | Town Justice |
| Two | 09/24/2009 | $552,513,000.00 | Washington State Department of Licensing | Police Officer |
| Three | 10/06/2009 | $2,820,000,000.00. | Washington State Department of Licensing | Executive of MHVFCU |
| Four | 02/12/2010 | $2,820,000,000.00. | New York State Secretary of State | Executive of MHVFCU |

(All in violation of Title 18, United States Code, Sections 1341, 1349 and Section 2)

A TRUE BILL

Dated: June 18, 2010

_____
FOREPERSON OF THE GRAND JURY

RICHARD S. HARTUNIAN
United States Attorney

By: _____
Thomas A. Capezza
Assistant U.S. Attorney
Bar Roll No. 503159

such mailing constituting a separate count of this Indictment:

| Count | Date | Lien Amount | Location Filed | Purported Debtor |
|-------|------|-------------|----------------|------------------|
| One | 09/24/2009 | $552,513,000.00 | Washington State Department of Licensing | Town Justice |
| Two | 09/24/2009 | $552,513,000.00 | Washington State Department of Licensing | Police Officer |
| Three | 10/06/2009 | $2,820,000,000.00. | Washington State Department of Licensing | Executive of MHVFCU |
| Four | 02/12/2010 | $2,820,000,000.00. | New York State Secretary of State | Executive of MHVFCU |

**(All in violation of Title 18, United States Code, Sections 1341, 1349 and Section 2)**

A TRUE BILL

Dated: June 18, 2010

_____
FOREPERSON OF THE GRAND JURY

RICHARD S. HARTUNIAN
United States Attorney

By: _____
Thomas A. Capezza
Assistant U.S. Attorney
Bar Roll No. 503159



*28 USC 530B*

NB: This unofficial compilation of the U.S. Code is current as of Jan. 5, 2009 (see http://www.law.cornell.edu/uscode/uscprint.html).

## TITLE 28 - JUDICIARY AND JUDICIAL PROCEDURE
### PART II - DEPARTMENT OF JUSTICE
#### CHAPTER 31 - THE ATTORNEY GENERAL

### § 530B. Ethical standards for attorneys for the Government

**(a)** An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

**(b)** The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.

**(c)** As used in this section, the term "attorney for the Government" includes any attorney described in section 77.2(a) of part 77 of title 28 of the Code of Federal Regulations and also includes any independent counsel, or employee of such a counsel, appointed under chapter 40.

(Added Pub. L. 105–277, div. A, § 101(b) [title VIII, § 801(a)], Oct. 21, 1998, 112 Stat. 2681–50, 2681–118.)

### Effective Date

Pub. L. 105–277, div. A, § 101(b) [title VIII, § 801(c)], Oct. 21, 1998, 112 Stat. 2681–50, 2681–119, provided that: "The amendments made by this section [enacting this section] shall take effect 180 days after the date of the enactment of this Act [Oct. 21, 1998] and shall apply during that portion of fiscal year 1999 that follows that taking effect, and in each succeeding fiscal year."

# State of New York
# Department of State } ss:

I hereby certify, that a diligent examination has been made of the index of corporation certificates filed by this department for a Certificate of Incorporation for UNITED STATES OF AMERICA CORPORATION and that upon such examination, no such Certificate of Incorporation has been found on file with this Department.



\*\*\*

*WITNESS my hand and the official seal of the Department of State at the City of Albany, this 16th day of November two thousand and ten.*

*First Deputy Secretary of State*

*201011170710 100*



**CORPORATION SERVICE COMPANY®**

# Return of Service of Process

**LGR**
**Transmittal Number: 5000889**

**Return to Sender Information:**

Paul Andrew Mitchell
Paul Andrew Mitchell BA, MS
Private Attorney Agent
501 West Broadway, A-332
San Diego, CA 92101

**Date:**                    02/12/2007

**Entity:**                  United States of America Corporation
**Title of Action:**         United States of America vs. John S. Williamson
**Court:**                   United States Court of Appeals, California
**Case Number:**             04-CV-0885 BB/WDS

Service of Process has been received from you on behalf of one of the defendants named in the above action.

The service of process received from you is being returned. We cannot receive this service as registered agent due to the reason(s) listed below.

The company against whom service is directed has been revoked in this State.  Accordingly, our authority as the registered agent has terminated.

Our client records are confidential. We do not release any information on our clients, agent representation or service received. We suggest you contact the Secretary of State, or other appropriate agency, for more information.

2711 Centerville Road   Wilmington, DE 19808
(888) 690-2882   |   sop@cscinfo.com

# State of New York
# Department of State } ss:

I hereby certify, that a diligent examination has been made of the index
of corporation certificates filed by this department for a Certificate of
Incorporation for UNITED STATES OF AMERICA, INC. and that upon such
examination, no such Certificate of Incorporation has been found on file
with this Department.



***

*WITNESS my hand and the official seal
of the Department of State at the City of
Albany, this 16th day of November two
thousand and ten.*

*First Deputy Secretary of State*

*201011170701  100*



**CORPORATION SERVICE COMPANY**

# Return of Service of Process

**LGR**
**Transmittal Number: 5000902**

**Return to Sender Information:**

Paul Andrew Mitchell
Paul Andrew Mitchell BA, MS
Private Attorney Agent
501 West Broadway, A-332
San Diego, CA 92101

| | |
|---|---|
| **Date:** | 02/12/2007 |
| **Entity:** | United States of America Inc. |
| **Title of Action:** | United States of America vs. John S. Williamson |
| **Court:** | United States Court of Appeals, California |
| **Case Number:** | 04-CV-0885 |

Service of Process has been received from you on behalf of one of the defendants named in the above action.

The service of process received from you is being returned. We cannot receive this service as registered agent due to the reason(s) listed below.

The company against whom service is directed has been revoked in this State.  Accordingly, our authority as the registered agent has terminated.

Our client records are confidential. We do not release any information on our clients, agent representation or service received. We suggest you contact the Secretary of State, or other appropriate agency, for more information.

2711 Centerville Road   Wilmington, DE 19808
(888) 690-2882   |   sop@cscinfo.com

# State of New York
# Department of State } ss:

I hereby certify, that a diligent examination has been made of the index
of corporation certificates filed by this department for a Certificate of
Incorporation for THE UNITED STATES OF AMERICA, INC. and that upon such
examination, no such Certificate of Incorporation has been found on file
with this Department.



\*\*\*

*WITNESS my hand and the official seal*
*of the Department of State at the City of*
*Albany, this 16th day of November two*
*thousand and ten.*

*First Deputy Secretary of State*

*201011170705  100*

    

Left   Rotate Right   Actual Size   Zoom To Fit   Zoom In   Zoom Out

**Division of Corporations -- Online Services**

+ ⊘ https://sos-res.state.de.us/tin/controller                    ⊙ ⌄ Q⌄ BERGEN

hu...fish Lawyer   Google Maps...tude Popup   PoliceAuctio...nt auctions.   police proceedure expert   NJ

# State of Delaware

The Official Website for the First State

Visit the Governor | General Assembly | Courts   Other Elected Officials

lelp | Search Delaware :                  (Go)                                    Citizen Services | Bu

e: Division of Corporations

Frequently Asked Questions   View Search Results

## Entity Details

### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| **File Number:** | **4525682** | **Incorporation Date / Formation Date:** | **04/14/2008** (mm/dd/yyyy) |
| **Entity Name:** | THE UNITED STATES OF AMERICA, INC. | | |
| **Entity Kind:** | **CORPORATION** | **Entity Type:** | **GENERAL** |
| **Residency:** | **DOMESTIC** | **State:** | **DE** |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| **Name:** | SPIEGEL & UTRERA, P.A. |
| **Address:** | 9 EAST LOOCKERMAN STREET SUITE 3A |
| **City:** | DOVER   **County:** KENT |
| **State:** | DE   **Postal Code:** 19901 |
| **Phone:** | (302)744-9800 |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history

### U.S. Supreme Court

### UNITED STATES v. COOPER CORPORATION, 312 U.S. 600 (1941)

### 312 U.S. 600

### UNITED STATES
### v.
### COOPER CORPORATION et al.
### No. 484.

### Argued March 6, 1941.
### Decided March 31, 1941.

Messrs. Robert H. Jackson, Atty. Gen., and Hugh B. Cox, of Washington, D.C., for petitioner.

[312 U.S. 600, 602] Mr. Luther Day, of Cleveland, Ohio, for respondents. [312 U.S. 600, 603]

Mr. Justice ROBERTS delivered the opinion of the Court.

We took this case because it presents the important question whether the United States may maintain an action for treble damages under 7 of the Sherman Act. 1

The complaint charged the respondents had illegally [312 U.S. 600, 604] combined and conspired to fix collusive prices of articles purchased by the United States; alleged the money damage inflicted upon the United States thereby, and sought judgment for three times that amount. The District Court granted a motion to dismiss the complaint on the ground that the United States is not a person as the term is used in 7 of the Sherman Act. 2 The Circuit Court of Appeals affirmed the judgment. 3

Section 7 provides:

'Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any circuit court of the United States in the district in which the defendant resides or is found, without respect to the amount in controversy, and shall recover three fold the damages by him sustained, and the costs of suit, including a reasonable attorney's fee.'

The United States is a juristic person in the sense that it has capacity to sue upon contracts made with it or in vindication of its property rights. The Sherman Act, however, created new rights and remedies which are available only to those on whom they are conferred by the Act. 4 The precise question for decision, therefore, is whether, by the use of the phrase 'any person', Congress intended to confer upon the United States the right to maintain an action for treble damages against a violator of the Act.

Since, in common usage, the term 'person' does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it. 5 But there is no hard [312 U.S. 600, 605] and fast rule of exclusion. The purpose, the subject matter, the context, the legislative history, and the

executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law. 6

The Government admits that often the word 'person' is used in such a sense as not to include the sovereign but urges that where, as in the present instance, its wider application is consistent with, and tends to effectuate, the public policy evidenced by the statute, the term should be held to embrace the Government. And it strongly urges that all the considerations which moved Congress to confer the right to recover damages upon individuals and corporations injured by violations of the Act apply with equal force to the United States which, as a large procurer of goods and services, is as likely to be injured by the denounced combinations and monopolies as is a natural or corporate person. We are asked, in this view, so to construe the Act as not to deny to the Government what public policy is thought to require.

Decision is not to be reached by a strict construction of the words of the Act, nor by the application of artificial canons of construction. On the contrary, we are to read the statutory language in its ordinary and natural sense, and if doubts remain, resolve them in the light, not only of the policy intended to be served by the enactment, but, as well, by all other available aids to construction. But it is not our function to engraft on a statute additions which we think the legislature logically might or should have made. 7 [312 U.S. 600, 606] The recent expressions of this court in Tigner v. Texas, 310 U.S. 141, 148 , 149 S., 60 S.Ct. 879, 882, 883, 130 A.L.R. 1321, warn that it is not for the courts to indulge in the business of policy making in the field of antitrust legislation. Congress has not left us at large to devise every feasible means for protecting the Government as a purchaser. It is the function of Congress to fashion means to that end, and Congress has discharged this duty from time to time according to its own wisdom. Our function ends with the endeavor to ascertain from the words used, construed in the light of the relevant material, what was in fact the intent of Congress.

1. Without going beyond the words of the section, the use of the phrase 'any person' is insufficient to authorize an action by the Government. This conclusion is supported by the fact that if the purpose was to include the United States, 'the ordinary dignities of speech would have led' to its mention by name. 8 It is supported also by the collocation of the phrase in the section. The provision is that 'any person' injured by violation of the Act 'by any other person or corporation' may maintain an action for treble damages against the latter. It is hardly credible that Congress used the term 'person' in different senses in the same sentence. Yet, unless it did, the United States would not only be entitled to sue but would be liable to suit for treble damages. The more natural inference, we think, is that the meaning of the word was in both uses limited to what are usually known as natural and artificial persons, that is, individuals and corporations. In addition, the concluding words of the section give the injured party, as part of his costs, a reasonable attorney's fee,-a provision more appropriate for a private litigant than for the United States.

2. The connotation of a term in one portion of an Act may often be clarified by reference to its use in others. [312 U.S. 600, 607] The word 'person' is used in several sections other than 7. In 1, 2, and 3, 15 U.S.C.A. 1-3, the phrase designating those liable criminally is 'every person who shall' etc. In each instance it is obvious that while the term 'person' may well clude a corporation it cannot embrace the United States. In 8, 15 U.S.C.A. 7, Congress attempted to make clear that the term 'person' is to include a corporation. The provision is 'that the word 'person,' or 'persons,' wherever used in this act (section 1, 2, 3, or 15 of this chapter) shall be deemed to include corporations and associations existing under or authorized by the laws of

either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country.' The very fact, however, that this sweeping inclusion of various entities was thought important to preclude any narrow interpretation emphasizes the fact that if the United States was intended to be included Congress would have so provided We may say in passing that the argument that the United States may be treated as a corporation organized under its own laws, that is, under the Constitution as the fundamental law, seems so strained as not to merit serious consideration. It is fair to assume that the term 'person', in the absence of an indication to the contrary, was employed by the Congress throughout the Act in the same, and not in different, senses.

**3.** The scheme and structure of the legislation is likewise important to a proper ascertainment of its purpose and intent. Sections 1, 2, and 3 impose criminal sanctions for violations of the acts denounced in those sections respectively. Section 4, 15 U.S.C.A. 4, gives jurisdiction to the federal courts of proceedings by the Government to restrain violations of the Act and imposes upon United States Attorneys the duty to institute equity proceedings to that end. Section 5, 15 U.S.C.A. 5, regulates service in such suits. Section 6, 15 U.S.C.A. 6, authorizes seizure, in the course of interstate transportation, of goods owned under any contract or pursuant to any conspiracy made illegal by the statute. [312 U.S. 600, 608] Thus far the Act deals in detail with the criminal and civil remedies of the Government in vindication of the policy of the legislation. There follows 7, the only other substantive section, giving a civil action for an injury to property rights.

It seems evident that the Act envisaged two classes of actions,-those made available only to the Government, which are first provided in detail, and, in addition, a right of action for treble damages granted to redress private injury. If this be the fair construction of the Act, the Court's task is finished when it gives effect to the purposes of the law, evidenced by the various remedies it affords for different situations. Though the law gave a remedy by way of injunction at the suit of the United States, we were pressed to say that a private person should have the same remedy. We were compelled to answer that Congress had not seen fit so to provide. 9 For the like reasons we cannot hold that since a private purchaser is given a remedy for his losses in treble damages, the United States should be awarded the same remedy.

**4.** Supplemental legislation lends support to the view that Congress had in mind the distinction between public and private remedies and did not intend to confer a right of action on the United States by the use of the phrase 'any person' in 7. The antitrust provisions of the Wilson Tariff Act10 follow the same pattern as the Sherman Act. Section 7311 denounces combinations and agreements between parties importing articles from a foreign country and declares that every person guilty of [312 U.S. 600, 609] violation of its terms shall be punished. Section 74 confers jurisdiction upon the federal courts and authorizes proceedings in equity by the United States to restrain such acts. Section 76 provides for seizure and forfeiture of property imported into the United States contrary to law and 77 gives an action for treble damages to any person against any other person or corporation in the exact words of 7 of the Sherman Act.

The antidumping provisions of the Revenue Act of 191612 make it a criminal offense for 'any person' importing articles from a foreign country to sell, or cause to be imported or sold, such articles within the United States at substantially less than the market value of such articles at the time of exportation in the principal markets of the country of production, etc. They further declare that any person injured in his business or property by any violation may sue therefor in the United States courts and recover threefold damages and costs, including a reasonable

attorney's fee. It must be obvious that the United States cannot be embraced by the phrase 'any person' there used.

When Congress came to supplement the Sherman Act by the Clayton Act, 13 it included in the latter a significant section bearing upon the question under consideration. Doubts had arisen as to whether issues adjudicated in a criminal proceeding or a suit in equity brought by the United States should be taken as concluded in an action for treble damages subsequently brought by an injured party. By 5 of the Clayton Act it was sought to give such adjudication that effect. The section provides:

> 'A final judgment or decree hereafter rendered in any criminal prosecution or in any suit or proceeding in [312 U.S. 600, 610] equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken.'

Immediately following this provision the section continues:

> 'Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof.'

Here again it seems clear that Congress recognized the distinction between proceedings initiated by the Government to vindicate public rights and actions by private litigants for damages.

It should be noted that 1 of the Clayton Act again defined the term 'person' exactly as it was defined by 8 of the Sherman Act, and 4 again enacted that any person injured by a violation might recover treble damages together with a reasonable attorney's fee.

**5.** There has been a considerable body of judicial expression to the effect that 7 authorizes an action for damages only by private suitors and not by the Government. 14 While none of the cases presented the exact ques- [312 U.S. 600, 611] tion here involved, the statements bearing on the subject exhibit a uniform opinion contrary to the Government's present contention.

**6.** The legislative history is persuasive that the Sherman Act was not intended to give the United States a civil action for damages. Senator Sherman, on March 18, 1890, introduced a bill which, in 1, provided that the United States might bring various civil actions and, in 2, that 'any person' should be entitled to sue any 'person' or 'corporation' for double damages. 15

In the discussion of the bill it was pointed out that 1 authorized the United States to bring civil actions including those for simple damages and that, under 2, private parties were entitled to sue for double damages. Senator Sherman stated that 2 gave a right to sue for double damages only to private parties and not to the United [312 U.S. 600, 612] States. He stated that the civil suit by the United States authorized by 1 might be for an ouster of the power of the corporation, for

damages, or in quo warranto, and added: 'But the second section provides purely a personal remedy, a civil suit also by citizens of the United States.' 16

As is well known, after Senator Sherman's bill had been amended, Senator Hoar rewrote most of the bill. In so doing he eliminated 1 with its provision for civil suits by the United States and substituted 1, 2, 3, 4, and 6, specifying the remedies, civil, criminal, and by way of forfeiture, available to the United States. In that revision he retained, with slight change, 2 of the bill, increasing the recoverable damages to treble instead of double, and renumbered the section as 7. In this form the bill was adopted.

As already stated, the language of 7 of the Sherman Act was repeated in later statutes extending the antitrust laws although in the meantime this and other courts had expressed the view that the section accorded the Government no right of suit for treble damages. When the Clayton Act was before the Senate, Senator Culberson, Chairman of the Committee which reported the bill, enumerated the usual types of action prosecuted under the Sherman Act,-criminal prosecutions, suits in equity, and actions for damages, and stated with respect to Government suits under the Sherman Act and the Clayton Act: 'There is no suit authorized by any of these statutes except a criminal prosecution or a suit in equity. The United States does not bring a suit at law for damages.' 17 [312 U.S. 600, 613] In 1926 the Attorney General, in response to a Senate Resolution asking for information with respect to cases instituted under the first seven sections of the Sherman Act, wrote: 'Under Section 7, which gives to private persons the right to sue for injuries arising under the act, a number of actions have been instituted. The United States, however, under the statute is not a party to suits under that section.' 18

Senator O'Mahoney has introduced a bill, which is pending as S. 2719, prepared jointly by him and by the Assistant Attorney General in charge of antitrust matters. On June 28, 1939, the Senator stated that the purpose of the bill was to provide more effective civil remedies. In the course of his statement he said: 'There is only one other remedy worth mentioning available under existing law to the Department of Justice-the civil action for an injunction. In addition, there is the action in damages by a private person who has been injured. Neither of these remedies is effective.' He further stated: 'The bill permits the United States, in effect, to bring a suit for damages against an offending corporation and against its individual directors and officers.' 19

7. It is significant that, in the light of the expressions by the courts, the supplemental legislation, and the legislative history, no action has ever been brought by the United States under 7 in the fifty years during which [312 U.S. 600, 614] the statute has been in force until the present action was instituted. Down to the close of the year 1937, 428 criminal prosecutions and suits in equity had been instituted by the Government. 20 Down to December, 1939, 103 civil suits had been instituted by private persons, including corporations. 21 In the meantime the World War intervened with the Government a purchaser of enormous quantities of material and supplies. Then, as now, the complaint was prevalent that agreements and conspiracies existed to fix and maintain prices of materials needed by the Government. And throughout the life of the legislation able and vigilant officials devoted to enforcement of the policy of the Sherman Act have not been wanting.

In these circumstances the conviction that no right to sue had been given the Government, rather than a supine neglect to resort to an available remedy seems to us the true explanation of the fact that no such actions have been instituted by the United States.

In summary, we are of opinion that the text of the Act, taken in its natural and ordinary sense, makes against the extension of the term 'person' to include the United States and that the usual aids to construction, taken together, instead of inducing the contrary conclusion, go to support the view that Congress did not use the word in the sense for which the Government contends.

The judgment is affirmed. [312 U.S. 600, 615] Mr. Justice MURPHY took no part in the consideration or decision of this case.

Mr. Justice BLACK (dissenting).

In order to give purchasers of goods an opportunity to buy them at prices fixed by competitive trade, the Sherman Act made it illegal to fix prices by combination or conspiracy. It is difficult for me to believe that Congress did not intend to give equal protection to all purchasers similarly injured. In my judgment, no language of that Act, nothing in its history, and no argument now presented for our consideration makes necessary the conclusion that Congress intended to discriminate in favor of some purchasers and against others. It would require clear and unequivocal statutory language to persuade me that Congress intended to grant a remedy to all except one of those who were injured by trust prices- the 'all' including every natural and artificial person, every corporation and association,1 foreign and domestic, and the single exception [312 U.S. 600, 616] being the United States, which buys more goods and services than any other single purchaser. 2 No such clear and unequivocal statutory language exists. And no plausible reason has been hazarded to prove that the government as a purchaser of goods needs less protection from unlawful combinations than do other buyers. 3 Many deplorable instances in our history, in fact, indicate the contrary. Congress, no doubt stimulated to action by these historical occurrences, has by numerous enactments recognized the urgent necessity for safeguarding governmental purchases of goods and services against unfair and collusive price-fixing. To that end, competitive bidding as a prerequisite to government contracts has been the general statutory rule over a long period of years, and combinations to deprive the government of the advantages of such competition have been made criminal. It is therefore strange indeed that the Sherman Act, the greatest of all legislative efforts to make competition, not combination, the law of trade, should now be found to afford a greater protection against collusive price-fixing to every other buyer in the United States than is afforded to the United States itself.

So much for what seems to me to be the logical approach to the problem, and the one that should cause us to say that the government can sue for damages. If, however, we apply familiar canons of construction, I think we are led to the same result. For it is a primary principle that a law should be construed so as to carry [312 U.S. 600, 617] out its purpose, in the light of the evil aimed at and the protection intended to be afforded. Here, among the evils legislated against was price-fixing by combination, and among the remedies afforded was the giving of a right of action to purchasers injured by prices so fixed. The result of this case-denying to the largest single purchaser of all goods manufactured and sold in the nation the protection afforded by this legislation-is to restrict the remedy in such way that the evil aimed at is less likely to be suppressed. For the construction given the Sherman Act, insofar as sales to the government and civil damages are concerned, enables those guilty of violating it to elude its provisions, escape its consequences, and defeat its objects.

Nor do I believe that the previous failure of the Attorneys General of the United States to bring actions similar to this should be deemed a persuasive reason to read the government out of the

Act's benefits. The 1926 statement of the Attorney General to the effect that 'the United States ... is not a party to suits under' section 7 does not supply such a reason. For in the quoted statement the Attorney General did not take the position that the government lacked the power to sue for civil damages; apparently what he had reference to was the fact that the Sherman Act did not make the United States a party to actions for civil damages by private persons against private persons. We do not know and cannot possibly determine why no prior suits were instituted for the benefit of the government. To assign reasons for such inaction is but to guess. And the guesses would doubtless vary almost in accordance with the preconceived notions of the guessers. But whatever might have been the reasons behind the government's failure to sue, sure it is that the Attorney General is not the purchasing agent of the government. He cannot be assumed to have constant knowledge of the manifold prob- [312 U.S. 600, 618] lems that face those who buy the government's supplies. In the final analysis, it is probably true that even an Attorney General who might zealously desire to enforce the criminal provisions of the Sherman Act would not likely be stimulated to institute civil proceedings for damages unless his attention was directed to the point by keenly alert and diligent purchasing agencies. To attempt to construe the Sherman Act by a vain effort to appraise the reasons responsible for the non-action of Attorneys General is a journey into the realm of imponderables I find it unnecessary to take. I would simply read the Act from its language and manifest purpose as giving all purchasers of goods a right to sue if they have been injured as the result of prices held up by those types of unlawful combination condemned by the Act. 4

The principle of strict construction now adopted in this case, resulting as it does in denying to the government the benefit of section 7 of the Sherman Act, is a radical departure from a long established policy under which the courts have construed laws most liberally in order to de- [312 U.S. 600, 619] clare the government entitled to their benefits. 5 And certainly it can hardly be denied that the language of the Act, giving all persons a right of action, should if liberally construed be held to justify suit by the United States. For in Cotton v. United States, 11 How. 229, 231, decided forty years before the Sherman Act was adopted, this Court said in speaking of the United States: 'Every sovereign State is of necessity a body politic, or artificial person, and as such capable of making contracts and holding property. ... It would present a strange anomaly, indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, they were not entitled to the same remedies for their protection.' And, speaking in similar vein in Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 92 , 55 S.Ct. 50, 53, after having cited Blackstone for the proposition that the sovereign is a 'corporation', and after having gone even beyond this to hold that the statutory word 'resident' included the United States, the Court said: 'This may be in the nature of a legal fiction; but legal fictions have an appropriate place in the adminis- [312 U.S. 600, 620] tration of the law when they are required by the demands of convenience and justice.' 6

These particular cases are but facets of a general rule that has long been accepted-the United States can exercise all of the legal remedies which other persons, bodies or associations can exercise, both at common law and under statutes,7 unless there is something in a statute or in its history to indicate an intent to deprive the United States of that right. 8 In this case, nothing in the Sherman Act itself and nothing in its legislative history makes necessary the conclusion that Congress intended to withhold from the United States a remedy given to all other purchasers. 9 Under these circumstances, it is my opinion that the judgment below should be reversed.

Mr. Justice REED and Mr. Justice DOUGLAS join in this dissent.

**Footnotes**

[ Footnote 1 ] Act of July 2, 1890, c. 647, 26 Stat. 209, 210, 15 U.S.C.A. 15 note.

[ Footnote 2 ] D.C., 31 F.Supp. 848.

[ Footnote 3 ] 2 Cir., 114 F.2d 413.

[ Footnote 4 ] Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 174 , 35 S.Ct. 398, 401, Ann.Cas. 1916A, 118; Fleitmann v. Welsbach Street Lighting Co., 240 U.S. 27, 29 , 36 S.Ct. 233, 234; Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 593 , 41 S.Ct. 209, 210.

[ Footnote 5 ] In re Fox, 52 N.Y. 530, 11 Am.Rep. 751; United States v. Fox, 94 U.S. 315 , 321.

[ Footnote 6 ] See Levy v. M'Cartee, 6 Pet. 102, 110; United States v. Freeman, 3 How. 556, 565; Ohio v. Helvering, 292 U.S. 360, 370 , 54 S.Ct. 725, 727; Nardone v. United States, 302 U.S. 379 , 58 S.Ct. 275.

[ Footnote 7 ] The Pedro, 175 U.S. 354, 364 , 20 S.Ct. 138, 141; Dewey v. United States, 178 U.S. 510, 519 , 520 S., 20 S.Ct. 981, 984; Pirie v. Chicago T. & T. Co., 182 U.S. 438, 451 , 21 S.Ct. 906, 911; White v. United States, 191 U.S. 545, 551 , 552 S., 24 S.Ct. 171, 172; Ebert v. Poston, 266 U.S. 548, 554 , 45 S.Ct. 188, 190; Helvering v. Oregon L.I.Co., 311 U.S. 267, 272 , 61 S.Ct. 207, 209.

[ Footnote 8 ] Davis v. Pringle, 268 U.S. 315, 318 , 45 S.Ct. 549, 550.

[ Footnote 9 ] Minnesota v. Northern Securities Co., 194 U.S. 48, 71 , 24 S.Ct. 598, 604; Paine Lumber Co. v. Neal, 244 U.S. 459 , 37 S.Ct. 718. The Act was amended to authorize suits for injunctions by private litigants. See the Clayton Act of October 15, 1914, c. 323, 16, 38 Stat. 730, 737, 15 U.S.C. 26, 15 U.S.C.A. 26.

[ Footnote 10 ] Act of August 27, 1894, c. 349, 28 Stat. 509, as amended by Act of Feb. 12, 1913, c. 40, 37 Stat. 667, 15 U.S.C. 8, 15 U.S.C.A. 8.

[ Footnote 11 ] 28 Stat. 570, 37 Stat. 667.

[ Footnote 12 ] Act of September 8, 1916, c. 463, 39 Stat. 756, 798, 15 U.S.C. 72, 15 U.S.C.A. 72.

[ Footnote 13 ] Act of October 15, 1914, c. 323, 38 Stat. 730.

[ Footnote 14 ] Pidcock v. Harrington, C.C., 64 F. 821, 822; Lowenstein v. Evans, C.C., 69 F. 908, 911; Greer, Mills & Co. v. Stoller, C.C., 77 F. 1, 3; City of Atlanta v. Chattanooga Foundry, C.C., 101 F. 900, 904; Standard Sanitary Manufacturing Co. v. United States, 226 U.S. 20, 52 , 33 S.Ct. 9, 16; United States v. Patterson, D.C., 201 F. 697, 714; General Investment Co. v. Lake Shore & Michigan So. Ry. Co., 260 U.S. 261, 286 , 43 S.Ct. 106, 116; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, 889; Quemos Theatre Co. v. Warner Bros. Pictures, D.C ., 35 F.Supp. 949, 950; Tigner v. Texas, 310 U.S. 141, 148 , 60 S.Ct. 879, 882, 130 A.L.R. 1321.

[ Footnote 15 ] 'Section 1:

'... And the circuit court of the United States shall have original jurisdiction of all suits of a civil nature at common law or in equity arising under this section, and to issue all remedial process, orders, or writs proper and necessary to enforce its provisions. And the Attorney-General and the several district attorneys are hereby directed, in the name of the United States, to commence and prosecute all such cases to final judgment and execution.'

'Section 2:

'That any person or corporation injured or damnified by such arrangement, contract, agreement, trust, or combination defined in the first section of this Act may sue for and recover, in any court of the United States of competent jurisdiction, without respect to the amount involved, of any person or corporation a party to a combination described in the first section of this Act, twice the amount of damages sustained and the costs of the suit, together with a reasonable attorney's fee.'

[ Footnote 16 ] 21 Cong.Rec. 2563, 2564.

[ Footnote 17 ] 51 Cong.Rec. 13898. Statements by members of the House Judiciary Committee indicate a similar view: 51 Cong.Rec. 9079, 9490. Representative Webb the chairman of that Committee mentioned the civil remedies available under the bill as treble damage actions by persons, suits by the Federal Trade Commission, suits by the United States for injunctions, and similar suits by persons. He then said 'Certainly the remedies are cumulative. The remedies pile up, and all of the remedies are open to the individual and to the government in a suit.' 51 Cong.Rec. 16276. But obviously he meant that the remedies given the public and the individual respectively were cumulative, as they clearly are; for it is plain the remedy given the Federal Trade Commission is not afforded to the individual.

[ Footnote 18 ] Sen.Doc.No. 79, 69th Cong., 1st Sess., p. 1.

[ Footnote 19 ] 84 Cong.Rec. 8192.

[ Footnote 20 ] 'Federal Antitrust Laws', published by the Department of Justice January 1938.

[ Footnote 21 ] 49 Yale Law Journal 296.

[ Footnote 1 ] A 1940 report to the Senate, made by the Secretary of the Treasury pursuant to a Senate Resolution, revealed that the federal government was transacting part of its business through the medium of at least 1469 government corporations. Senate Document No. 172, 76th Cong., 3rd Sess., Part 1, p. 4. The judgment here does not foreclose such corporations from suing for damages under section 7, or so I assume. If I am correct in my assumption, the result is that as to those purchases made by its corporate agencies, the Government is protected by the Sherman Act, while as to those purchases made by its non-corporate agencies, it is not so protected. A process of statutory construction which results in giving to government corporations a right denied to constitutionally authorized government departments seems to me to conflict with the frequently declared rule that a statute should not be interpreted in such way as to produce an unreasonable or unjust result. See United States v. American Trucking Associations,

310 U.S. 534, 542 , 543 S., 60 S.Ct. 1059, 1063; Sorrells v. United States, 287 U.S. 435, 446 , 53 S.Ct. 210, 214, 86 A.L.R. 249.

[ Footnote 2 ] For a recent study, see 'Government Purchasing-An Economic Commentary', Monograph No. 19 of the Temporary National Economic Committee ( 1940).

[ Footnote 3 ] An argument is offered to the effect that the government has no need of a right to damages, because it has the power to bring criminal and injunctive proceedings. But the right to bring those proceedings is given to the government for the protection of the public, rather than for its self protection as a purchaser. Further, criminal and injunctive proceedings, whatever their efficacy, do not achieve the object of section 7, which is to indemnify all injured purchasers.

[ Footnote 4 ] Though the Act is all-inclusive in naming those who may sue for damages, it is not equally all-inclusive in describing those acts which may be regarded as unlawful combinations. This is true both because of the original language and objects of the Sherman Act itself, and because of subsequent legislation. The most notable example of such subsequent legislation is that portion of the Clayton Act which provides: 'The labor of a human being is not a commodity or article of commerce. Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations ... or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws.' 38 Stat. 731, 15 U.S.C. 17, 15 U.S.C.A. 17. See Apex Hosiery Co. v. Leader, 310 U.S. 469 , 60 S.Ct. 982, 128 A.L.R. 1044.

[ Footnote 5 ] It is argued that if the government can sue for damages it may also be sued for damages. That question is not before us and need not be decided. Other principles will be material if such a question ever should be presented. See United States v. Sherwood, 312 U.S. 584 , 61 S.Ct. 767, 85 L.Ed. --, this day decided; Nardone v. United States, 302 U.S. 379, 383 , 384 S., 58 S.Ct. 275, 277; United States v. Knight, 14 Pet. 301, 315. Among these principles the most important is that of sovereign immunity. 'The sovereignty of the United States raises a presumption against its suability, unless it is clearly shown; nor should a court enlarge its liability to suit conferred beyond what the language ( of the statute in question) requires.' Eastern Transportation Co. v. United States, 272 U.S. 675, 686 , 47 S.Ct. 289, 291; Price v. United States, 174 U.S. 373, 375 , 376 S., 19 S.Ct. 765, 766; United States v. Sherwood, supra.

[ Footnote 6 ] To this statement the Court added: 'If to carry out the purposes of a statute it be admissible to construe the word 'person' as including the United States (cases to that effect having previously been cited), it is hard to see why, in like circumstances, it is inadmissible to construe the word 'resident' as likewise including the United States.' Cf. Ohio v. Helvering, 292 U.S. 360, 370 , 371 S., 54 S.Ct. 725, 727; Stanley v. Schwalby, 147 U.S. 508, 517 , 13 S.Ct. 418, 421.

[ Footnote 7 ] See Dugan v. United States, 3 Wheat. 172; United States v. Gear, 3 How, 120, 800, Appendix, 838; Cotton v. United States, supra. Cf. Dollar Savings Bank v. United States, 19 Wall. 227; United States v. Chamberlin, 219 U.S. 250 , 31 S.Ct. 155.

[ Footnote 8 ] Cf. Davis v. Pringle, 268 U.S. 315 , 45 S.Ct. 549.

[ Footnote 9 ] The legislative history of the Sherman Act is not enlightening on the question now before us. At best, all that can be said of the very few and scattered statements that were made on the subject during the debates on the Clayton Act is that they look both ways.

Dear Friends,

For an entity to become a corporation under federal law,
there must be an Act of Congress creating that corporation.

There are no Acts of Congress expressly incorporating
either the "United States" or the "United States of America".

In 1871 Congress did expressly incorporate the District
of Columbia, but D.C. and the "United States" are not
one and the same.  In that Act of 1871, Congress also
expressly extended the U.S. Constitution into D.C.:

http://www.supremelaw.org/cc/gilberts/intentm3.filed.htm#1871

In United States v. Cooper Corporation, 312 U.S. 600 (1941),
the Supreme Court wrote:

http://laws.findlaw.com/us/312/600.html

**"We may say in passing that the argument that the
United States may be treated as a corporation
organized under its own laws, that is, under the
Constitution as the fundamental law, seems so strained
as not to merit serious consideration ."**


Some of the confusion rampant on this subject may have
originated in the definition of "UNITED STATES OF
AMERICA" in Bouvier's Law Dictionary here:

http://www.supremelaw.org/ref/dict/bldu1.htm#union

See Paragraph 5 quoted here:

**"5.  The United States of America are a corporation
endowed with the capacity to sue and be sued, to convey
and receive property.  1 Marsh. Dec. 177, 181.
But it is proper to observe that no suit can be brought
against the United States without authority of law."**

Note that the plural verb "are" was used, providing further

evidence that the "United States of America" <u>are</u> plural,
as implied by the plural term "States". Also, the author
of that definition switches to "United States" in the second
sentence. This only adds to the confusion, because the
term "United States" has three (3) different legal meanings:

http://www.supremelaw.org/decs/hooven/hooven.htm#united.states

However, the decision cited above is Justice Marshall issuing dictum,
and it is NOT an Act of Congress. Here, again,
be very wary of courts attempting to "legislate" in the absence
of a proper Act of Congress. See <u>1 U.S.C. 101</u> for the
statute defining the required enacting clause:

http://www4.law.cornell.edu/uscode/1/101.html

And, pay attention to what was said in that definition here:
**"no suit can be brought against the United States
without authority of law"**. That statement is not only
correct;  it also provides another important clue:
Congress has conferred legal standing on the "United States"
to sue and be sued at 28 U.S.C. <u>1345</u> and <u>1346</u>, respectively:

http://www4.law.cornell.edu/uscode/28/1345.html
http://www4.law.cornell.edu/uscode/28/1346.html

Congress has NOT conferred comparable legal standing
upon the "United States of America" to sue, or be sued,
as such.

Furthermore, under the Articles of Confederation, the term
"United States of America" is the "stile" or phrase that was used
to <u>describe</u> the Union formed legally by those Articles:

**Articles of Confederation and perpetual Union between the States
of New Hampshire, Massachusetts bay, Rhode Island and Providence
Plantations, Connecticut, New York, New Jersey, Pennsylvania,
Delaware, Maryland, Virginia, North Carolina, South Carolina and
Georgia.**

**Article I. The Stile of this Confederacy shall be
"The United States of America."**

**Article II.  Each state retains its sovereignty, freedom, and independence, and every power, jurisdiction, and right, which is not by this Confederation expressly delegated to the United States, in Congress assembled."**

[end excerpt]

When they came together the first time to form a Union of several (plural) States, they decided to call themselves the "United States of America".

Note also that those Articles clearly distinguished "United States of America" from "United States" in Congress assembled.  The States formally delegated certain powers to the federal government, which is clearly identified in those Articles as the "United States".

**Therefore, the "United States of America" now refer to the 50 States of the Union, and the term "United States" refers to the federal government.**

The term "United States" is the term that is used consistently now throughout Title 28 to refer to the federal government domiciled in D.C.  There is only ONE PLACE in all of Title 28 where the term "United States of America" is used, and there it is used in correct contradistinction to "United States":

http://www4.law.cornell.edu/uscode/28/1746.html

Because Title 28 contains statutes which govern all federal courts, the consistent use of "United States" to refer to the federal government carries enormous weight.  Title 28 is the latest word on this subject, as revised, codified and enacted into positive law on June 25, 1948.  Moreover, the Supremacy Clause elevates Title 28 to the status of supreme Law of the Land.

To make matters worse and to propagate more confusion, the entity "UNITED STATES OF AMERICA" incorporated twice in the State of Delaware:

http://www.supremelaw.org/cc/usa.inc
http://www.supremelaw.org/cc/usa.corp


The main problem that arises from these questions is that
United States Attorneys are now filing lawsuits and
prosecuting criminal INDICTMENTS in the name of the
"UNITED STATES OF AMERICA" [sic]
but without any powers of attorney to do so.  Compare
28 U.S.C. 547 (which confers powers of attorney to represent
the "United States" and its agencies in federal courts):

http://www4.law.cornell.edu/uscode/28/547.html

They are NOT "United States of America Attorneys", OK?

First of all, they do NOT have any powers of attorney
to represent Delaware corporations in federal courts;
Congress never appropriated funds for them to do so
and Congress never conferred any powers of attorney
on them to do so either.

Secondly, the 50 States are already adequately represented
by their respective State Attorneys General;  therefore,
U.S. Attorneys have no powers of attorney to represent
any of the 50 States of the Union, or any of their agencies,
either.

They are "U.S. Attorneys" NOT "U.S.A. Attorneys", OK?

Accordingly, it is willful misrepresentation for any U.S. Attorney
to attempt to appear in any State or federal court on behalf
of the "UNITED STATES OF AMERICA" [sic].  And,
such misrepresentation is actionable under the McDade Act
at 28 U.S.C. 530B:

http://www4.law.cornell.edu/uscode/28/530B.html


There are quite a few "activists" running around the Internet
claiming that the "United States" and the "United States of

America" are both corporations.  These claims are not correct,
for the reasons already stated above.

A similar error occurs when these so-called "activists" cite
the federal statute at 28 U.S.C. 3002 as their only "proof"
that the "United States" was incorporated by Congress.
Here's the pertinent text of that statute:

http://www4.law.cornell.edu/uscode/28/3002.html

**As used in this chapter:**

**...**
**(15)  "United States" means --**
**(A)  a Federal corporation;**
**(B)  an agency, department, commission, board, or**
**other entity of the United States;  or**
**(C)  an instrumentality of the United States.**

[end excerpt]


First of all, note well that the stated scope of this definition
is limited to "this chapter" *i.e.* CHAPTER 176 of Title 28 –
Federal Debt Collection Procedures.  Overlooking the
limited scope of such definitions is a very common error
among many, if not all self-styled experts.  At best, this section
cannot be used as evidence that the federal government
should be treated as a valid corporation for all other intents
and purposes.  It takes a LOT more text than this one limited
definition to create *any* federal corporation!  Compare the
original Statutes at Large that created the Union Pacific
Railroad Company, for example.

Secondly, from the evidence above it should already
be clear that the "United States" (federal government)
is not now, and never has been, a federal corporation.
The statute at 28 U.S.C. 3002 merely defines the
term "United States" to embrace all *existing* federal
corporations.  Because the United States was not
an existing corporation when Congress enacted
section 3002, that statute did not create and could
not have created the United States as a federal

corporation in the first instance.

Thirdly, in <u>Eisner v. Macomber</u> the U.S. Supreme Court
told Congress that it was barred from re-defining
*any* terms that are used in the federal Constitution.
"United States" occurs in several places, because it is central
to the entire purpose of that Constitution.  Therefore,
the legislative attempt to re-define "United States" at
<u>section 3002</u> is necessarily <u>un</u>constitutional, because
it violates the Eisner Prohibition.

Fourthly, <u>section 3002</u> also exhibits 2 subtle tautologies,
which render it null and void for vagueness.  Here they are,
in case you missed them:

**"<u>United States</u>" means … an agency, department, commission,
board, or other entity of the <u>United States</u>;
or**
**"<u>United States</u>" means … an instrumentality of the <u>United States</u>.**

It is a fundamental violation of proper English grammar to use
the term being defined in any definition of that term, and such a
violation has clearly happened here.  If you don't yet recognize
the tautologies, then change one part of this definition to read:

*The term "United States" here also embraces any instrumentality
of the federal government.*

At the very least, this minor change eliminates the tautology and
removes the vagueness.  Nevertheless, such an attempt to re-define
the term "United States" *still* violates the Eisner Prohibition.

For a newspaper-level Press Release which further explores some
of the many legal ramifications of these widespread errors, please
see this Internet URL:

http://www.supremelaw.org/press/rels/cracking.title.28.htm


Sincerely yours,
/s/ Paul Andrew Mitchell, B.A., M.S.
Private Attorney General, Criminal Investigator and

Federal Witness:  18 U.S.C. <u>1510</u>, <u>1512</u>-<u>13</u>, <u>1964(a)</u>
<u>http://www.supremelaw.org/decs/agency/private.attorney.general.htm</u>
<u>http://www.supremelaw.org/index.htm</u>
<u>http://www.supremelaw.org/support.policy.htm</u>
<u>http://www.supremelaw.org/guidelines.htm</u>

**All Rights Reserved without Prejudice**

# FREEDOM OF INFORMATION ACT REQUEST

March 31, 2011 *A.D.*

Richard L. Huff, Co-Director
Office of Information and Privacy
U.S. Department of Justice
10th & Constitution, N.W.
Washington 20530
DISTRICT OF COLUMBIA, USA

# PAST DUE

Subject:   Freedom of Information Act ("FOIA") Request

Dear Mr. Huff:

This is a request under the Freedom of Information Act.   I request that a **copy of the following documents** be provided to Me, without delay:

1.   **proper PRESIDENTIAL COMMISSIONS signed by the President of the United States of America and countersigned by the U.S. Attorney General for eighty-two (82) federal employees seated presently or in the past on the U.S. District Court for the Judicial District of New York State, as required by 5 U.S.C. sections 2104 and 2902**;

2.   **proper OPM Standard Form Form 61 APPOINTMENT AFFIDAVITS signed by eighty-two (82) federal employees seated presently or in the past on the U.S. District Court for the Judicial District of New York State, as required by 5 U.S.C. sections 3331 and 2906;**

3.   **proper OATHS OF OFFICE FOR UNITED STATES JUDGES signed by eighty-two (82) federal employees seated presently or in the past on the U.S. District Court for the Judicial District of New York State, as required by 28 U.S.C. section 453;   and,**

4.   **proper SENATE CONFIRMATIONS of eighty-two (82) federal employees seated presently or in the past on the U.S. District Court for the Judicial District of New York State, as required by the Appointments Clause in the Constitution for the United States of America, as lawfully amended.**

Below please find an alphabetical list of the proper names of all eighty-two (82) federal employees whose credentials above I am hereby requesting, as listed at 728 F.Supp.2d, Pages VII *et seq.* and at the Internet Websites of the U.S. District Court for the Northern, Southern, Eastern and Western Districts of New York State:

http://www.nynd.uscourts.gov/
http://www.nysd.uscourts.gov/
http://www.nyed.uscourts.gov/
http://www.nywd.uscourts.gov/

I request a waiver of all fees for this request.

Disclosure of the requested information to Me is in the public interest, because it is likely to contribute *significantly* to public understanding of the operations and activities of the federal government, and is not *primarily* in My commercial interest.

See also 5 U.S.C. 552(a)(4)(B).   Statutes conferring original jurisdiction on federal district courts must be *strictly* construed. 18 U.S.C. 1961(5) authorizes a 10-year discovery window for RICO investigations.

If you are not the correct person to whom this FOIA request should be directed, please forward it without delay to the correct person(s).

Thank you for your timely consideration of this FOIA request.

Sincerely yours,

/s/ Paul Andrew Mitchell

Paul Andrew Mitchell, B.A., M.S.
Private Attorney General, Criminal Investigator and
Federal Witness:  18 U.S.C. 1510, 1512-13, 1964(a)
http://www.supremelaw.org/decs/agency/private.attorney.general.htm

**All Rights Reserved without Prejudice**

U.S. Mail:

       Paul Andrew Mitchell, B.A., M.S.
  c/o Lake Union Mail
     117 East Louisa Street
     Seattle 98102-3203
     WASHINGTON STATE, USA

[See USPS Publication #221 for addressing instructions.]

Attachments:

List of eighty-two (82) federal personnel seated presently or in the past on the U.S. District Court for the Judicial District of New York (cf 28 U.S.C. 112):

             http://www4.law.cornell.edu/uscode/28/112.html

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51
52
53

**Northern District of New York:**

(1)   David N. Hurd
(2)   Lawrence E. Kahn
(3)   Thomas J. McAvoy
(4)   Neal P. McCurn
(5)   Norman A. Mordue
(6)   Frederick J. Scullin, Jr.
(7)   Gary L. Sharpe
(8)   Glenn T. Suddaby


**Southern District of New York:**

(9)   Harold Baer, Jr.
(10)  Deborah A. Batts
(11)  Richard M. Berman
(12)  Naomi Reice Buchwald
(13)  P. Kevin Castel
(14)  Miriam Goldman Cedarbaum
(15)  Denise L. Cote
(16)  Paul A. Crotty
(17)  George B. Daniels
(18)  Kevin Thomas Duffy
(19)  Paul G. Gardephe
(20)  Thomas P. Griesa
(21)  Charles S. Haight, Jr.
(22)  Alvin K. Hellerstein
(23)  Richard J. Holwell
(24)  Barbara S. Jones
(25)  Lewis A. Kaplan
(26)  Kenneth M. Karas
(27)  John F. Keenan
(28)  John G. Koeltl
(29)  Peter K. Leisure
(30)  Victor Marrero
(31)  Lawrence M. McKenna
(32)  Colleen McMahon
(33)  Richard Owen
(34)  Robert P. Patterson, Jr.
(35)  William H. Pauley III
(36)  Loretta A. Preska
(37)  Jed S. Rakoff
(38)  Leonard B. Sand
(39)  Shira A. Scheindlin
(40)  Cathy Seibel
(41)  Louis L. Stanton
(42)  Sidney H. Stein
(43)  Richard J. Sullivan
(44)  Laura Taylor Swain
(45)  Robert W. Sweet
(46)  Kimba M. Wood

**Eastern District of New York:**

(47)  Carol Bagley Amon
(48)  Joseph Frank Bianco
(49)  Brian M. Cogan
(50)  Raymond J. Dearie
(51)  Sandra J. Feuerstein
(52)  Nicholas G. Garaufis
(53)  John Gleeson
(54)  Dora L. Irizarry
(55)  Kiyo A. Matsumoto
(56)  Roslynn R. Mauskopf
(57)  Allyne R. Ross
(58)  Joanna Seybert
(59)  Sandra L. Townes
(60)  Eric Nicholas Vitaliano


**Western District of New York:**

(61)  Richard J. Arcara
(62)  John T. Curtin
(63)  David G. Larimer
(64)  Charles J. Siragusa
(65)  William M. Skretny
(66)  Michael A. Telesca


**Not Listed Above:**

(67)  Frederick Block
(68)  Robert L. Carter
(69)  Richard Conway Casey
(70)  Denny Chin
(71)  Nina Gershon
(72)  Israel Leo Glasser
(73)  Denis R. Hurley
(74)  Sterling Johnson, Jr.
(75)  Edward R. Korman
(76)  Thomas Platt, Jr.
(77)  Frederick J. Scullin
(78)  Arthur D. Spatt
(79)  Dominic J. Squatrito
(80)  Sidney H. Stein
(81)  Jack B. Weinstein
(82)  Leonard D. Wexler


**Source:**  Internet Websites of the U.S. District Courts
for the four (4) Judicial Districts of New York;
and, 728 F.Supp.2d, Pages VII *et seq.*



**PRIORITY MAIL®**

UNITED STATES POSTAL SERVICE®

Visit us at usps.com



**United States Postal Service**

**DELIVERY CONFIRMATION™**

4454 6520 0000 0235 0180

richard-enrique
RR1 peek farms
C/O general post-office
hurley, [12443]
New York, united States of America
non-domestic without the U.S. without zipcode

for re:
# 10-CR-321(TJM)

TO: Clerk of Court
U.S. District Court
445 Broadway, Rm 5
Albany 12207-2924
NEW YORK STATE, US
12207

U.S. DISTRICT COURT
N.D. OF N.Y.

JOHN CLERK

1006

12207




UNITED STATES POSTAL SERVICE

U.S. POSTAGE
PAID
HURLEY, NY
APR 29, 11
12443
AMOUNT
$0.00
0001 8927-03



USA