**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA**

      v.                                                                                          **1:10-CR-321**

**RICHARD ENRIQUE ULLOA,**

                     **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

### DECISION & ORDER

**I.  INTRODUCTION**

Following his conviction on each of the seven counts of mail fraud charged in the Superseding Indictment, Defendant moves for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 or, in alternative, a new trial pursuant to Fed. R. Crim. P. 33. The Government has opposed the motion. For the reasons that follow, Defendant's motion is denied.

**II.  STANDARDS OF REVIEW**

    **a.  Rule 29**

Federal Rule of Criminal Procedure 29 provides that after a jury verdict, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a); see also Fed. R. Crim. P. 29(c)(1)(allowing for such motions after jury verdicts).

"A defendant challenging the sufficiency of the evidence supporting a conviction

1

faces a 'heavy burden.'" United States v. Glenn, 312 F.3d 58, 63 (2d Cir. 2002) (quoting United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994)).  On such motions, the Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004)(quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003).  In this regard, the Court must avoid substituting its own determination of the weight of the evidence presented and the reasonable inferences that may be drawn from that evidence. Id.  "Indeed, it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." Id.; see also United States v. Florez, 447 F.3d 145, 154-155 (2d Cir. 2006)("In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court.").

> "'[T]he relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Glenn, 312 F.3d at 63 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979)).  A court's analysis considers "'the evidence in its totality,' and the Government 'need not negate every theory innocence.'" Glenn, 312 F.3d at 63 (quoting United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000)). . . .  The relevant inquiry is "'whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" Autuori, 212 F.3d at 114 (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir.1984)).

United States v. Triumph Capital Group, Inc., 544 F.3d 149, 158 (2d Cir. 2008).

**b.** **Rule 33**

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

> "Generally, a motion for a new trial 'should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003) (quoting Atkins v. N.Y. City, 143 F.3d 100, 102 (2d Cir.1998)). A district court has "broad discretion ... to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir.1992)).  Though a district court is entitled to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses," Sanchez, 969 F.2d at 1413 (internal quotation marks omitted), it "must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury," Ferguson, 246 F.3d at 133 (quoting Autuori, 212 F.3d at 120).  While courts have "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," they "nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" Ferguson, 246 F.3d at 134 (quoting Sanchez, 969 F.2d at 1414).

Triumph Capital Group, Inc., 544 F.3d at 159.

### III. BACKGROUND

The superseding indictment charged Defendant Richard Enrique Ulloa with seven counts of mail fraud pursuant to 18 U.S.C. §§ 1341 and 1349. The trial commenced on December 28, 2010.  On December 30, 2010, the jury returned guilty verdicts on all seven counts.

Each of the seven counts concerned similar conduct taken by Defendant.  Evidence was presented at trial that indicated that when Defendant felt aggrieved by an individual or entity, whether a Town Justice, a police officer, a federal credit union, executives of a

3

federal credit union, a bank, or an attorney for a bank, Defendant would send the individual or entity via the United States mail a demand for payment based upon some arcane, obscure, and legally improper basis.  See e.g. Gov. Ex. 2 ("Declaration and Notice of Final Determination and Judgment in Nihil Deceit" sent to Town Justice Robert Vosper). When payment was not made, Defendant would file a UCC lien in either Washington or New York State.  The UCC liens stated that they  "WILL BE SERVED ON ALL FINANCIAL INSTITUTIONS."  Moreover, the liens were purportedly based on "NOTICE OF CLAIM OF MARITIME LIEN[s]", which identified persons as vessels. In some instances, the purported Maritime Liens contained the date of birth and/or the social security number of the purported debtors. The Maritime Liens were purportedly based on "Negative Averment[s]."  In addition, evidence was presented that Defendant filed "UCC Financing Statements" with the New York State Department of State that falsely and fraudulently asserted that Defendant's indebtedness to two financial institutions had been discharged or satisfied.

     Evidence was also presented that Defendant received numerous rulings from judges who considered, among other things, Defendant's "negative averments" and rejected same and issued a foreclosure judgment, a temporary restraining order and an injunction. Likewise, evidence was presented that Defendant received numerous warnings from attorneys who considered Defendant's papers, including his "negative averment" and the purported "promissory note" of Denny Ray Harding, to be legally improper.  Finally, evidence was presented that Defendant received a warning from the Ulster County Clerk who told defendant that his Maritime Liens naming individuals as vessels would not be accepted.  Defendant, however, ignored the judicial rulings and warnings from others, and

nevertheless made demands for money and filed false UCC liens when payments were not made.

Evidence was presented that these improper "liens" ranged in amounts up to $2,820,000,000.00, and the filing of the liens caused the affected individuals or entities to incur legal expenses in defending against the liens, and to suffer severe negative impacts on their creditworthiness and abilities to properly function.  Evidence was presented that the liens were sent by Defendant through the United States mails.

The jury was instructed that in order to convict Defendant of the crimes charged in the Superceding Indictment, the Government must prove beyond a reasonable doubt the following three elements:

> **First**, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the indictment;
>
> **Second**, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and
>
> **Third**, that in execution of that scheme, the defendant used or caused the use of the mails as specified in the indictment.

As indicated above, the jury convicted Defendant on each of the seven counts.

**IV.    DISCUSSION**

    **a.  Jury Composition**

Defendant's argument that the jury was "un-educated, un-sophisticated, and not intelligible [*sic*] enough to understand" the applicable law is without merit.  The jury was drawn from a randomly selected pool of jurors from the District which constituted a venire of Defendant's peers as required by the Sixth Amendment.  Defendant articulates no

infirmities concerning: (1) how the venire members were drawn, summoned or selected; (2) the specific qualifications of any juror; or (3) how the petit jury was selected. Defendant's challenge to the composition of the jury is denied as being without merit.

### b.  Applicable Law & Intent

It was for the Court to instruct the jury on the law applicable to the case, and Defendant has not pointed to any error in the jury instructions that would entitle him to a new trial.  Defendant's desire to litigate the basis of the underlying events that prompted him to engage in his fraudulent scheme, based upon his misunderstanding of the laws of this Country, is of no moment.[1]  Defendant was allowed to testify as to the basis for his actions, and it was for the jury to determine whether Defendant acted with a fraudulent intent in participating in the scheme for which he was charged. United States v. Speight, 2003 WL 22025322, at *4  (2d Cir. Aug. 28, 2003)(unpublished)("Whether Speight acted with innocent motives or with fraudulent intent was for the jury. Since the jury credited the government's proof of motive and rejected Speight's explanations of his conduct, his challenge on this ground fails.").  Defendant's motion for a new trial and/or judgment of acquittal based upon his interpretation of the law is denied.

### c.  Subject Matter and Personal Juridication

The Court has subject matter jurisdiction over this case, and personal jurisdiction over Defendant, by virtue of the allegations in the Superceding Indictment charging

---

[1] For instance, he argues that he had a proper Costa Rican driver's license when stopped by local police and ticketed for unlicenced operation; that the Towns in which he was prosecuted "were challenged as to why the 'right to travel' was converted to a privilege;" the Towns "remained mute;" and that, therefore, he was entitled to commence "commercial administrative process" to compel them to answer leading to his belief that he had a basis to file the liens that were the subject of the mail fraud counts.

Defendant with having committed federal offenses within the Northern District of New York. Defendant's contentions to the contrary are without merit.

### d.  Sixth Amendment Rights

Defendant was afforded his Sixth Amendment right to confrontation by being allowed to cross-examine the Government's witnesses.

Defendant's Sixth Amendment right to present a defense was not violated by the Court's determination, based upon proffers from Defendant's witnesses, that certain witnesses would not be able to provide relevant or admissible testimony. While the Court is well-aware that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense," Chambers v. Mississippi, 410 U.S. 284, 302 (1973), "this right does not preclude a judge from placing reasonable restrictions on the admission of evidence based on the concerns as to 'prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" United States v. Holmes, 44 F. 3d 1150, 1157 (2d Cir.1995) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). Thus, "[a]bsent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence." Holmes, 44 F.3d at 1157 (citations omitted). Defendant fails to identify any particular witness that was precluded from testifying that would have provided relevant or non-repetitive testimony.

Defendant's Sixth Amendment right to the assistance of counsel was not violated inasmuch as (1) Defendant determined to represent himself and demonstrated to the Court that he knowingly, voluntarily and intelligently waived his Sixth Amendment right to counsel, see 07/21/10 Text Minute Entry; and (2) the Court appointed the Office of the Federal Public Defender for the Northern District of New York as standby counsel to assist

Defendant in this matter. See 10/20/10 Order, dkt. # 50.

### d. Sufficiency of the Superceding Indictment

Defendant's challenges to the Superseding Indictment are without merit. An indictment need not be preceded by a criminal complaint;[2] Defendant presents no basis for his conclusion that "the second (amended) indictment was not presented in its totality to the new Grand Jury;" and there is nothing improper with a different grand jury returning a superseding indictment absent a demonstration by Defendant, which is lacking here, that the Government's use of the grand jury was improper. See United States v. R. Enterprises, Inc., 498 U.S. 292, 300-301 (1991)("We begin by reiterating that the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority."); United States v. Mechanik, 475 U.S. 66, 75, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring in judgment) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process."); United States v. Salameh, 152 F.3d 88, 109-110 (2d Cir.1998)(The defendant "has the burden of showing that the government's use of the grand jury was improper."); cf. United States v. Capoccia, 503 F.3d 103, 107 (2d Cir. 2007)("[A] different grand jury sitting in Burlington, Vermont returned a Second Superseding Indictment (the "Indictment") against Capoccia and three of his colleagues."); United States v. Bok, 1997 WL 148815, at *3 (S.D.N.Y. Mar. 27, 1997) ("[E]ven if the original Indictment was in some way defective, the returning of a Superseding Indictment by a different grand jury cures any prejudice to the defendant that

---

[2] And there is no need for a preliminary hearing when there is no criminal complaint filed before an indictment is returned by a grand jury.

may have been caused by an improper original Indictment."). The motion on this ground is denied.

### e. Sufficiency of the Evidence

Defendant's argument that the evidence was insufficient to support his convictions is unavailing. The evidence at trial was sufficient to establish that Defendant was motivated by his efforts to retaliate against persons and entities that had displeased him in some manner. The evidence was sufficient to establish that Defendant, with intent to defraud, devised and intended to devise a scheme or artifice to defraud. That is, the evidence was sufficient to establish that Defendant, using the mails, made numerous written fraudulent demands for payments of monies, and following non-payment, filed false UCC liens against the targeted persons and entities. This evidence was sufficient for the jury to conclude that Defendant did so for the purpose of obtaining money and property by means of materially false or fraudulent pretenses predicated on retaliation and not on the basis of legitimate economic relationships. See Speight, 2003 WL 22025322, at *4 (demands for money and possibility of nominal payments sufficient); see also United States v. Wallach, 935 F.2d 445, 461 (2d Cir. 1991) (government not required to show that intended victim actually defrauded).

Additionally, the evidence was sufficient to establish that Defendant filed false UCC liens to create indebtedness purportedly under the Uniform Commercial Code, and those false demands for money and indebtedness necessitated responses in the form of costly legal actions which drained the victim's resources. The evidence at trial was sufficient to establish that Defendant was motivated by intent to defraud and not by innocent motives or "good faith." Accordingly, Defendant's motion for a judgment of acquittal based on the

sufficiency of the evidence is denied.

### f.  Constitutional Challenges to Mail Fraud Statute

As this Court has already ruled in this case, the mail fraud statute is not vague or ambiguous and does not infringe upon Defendant's free speech rights.  United States v. Rybicki, 354 F.3d 124, 142-43 (2d Cir. 2003); United States v. Rowlee, 899 F.3d 1275, 1280-81 (2d Cir. 1990); United States v. DeFusco, 940 F.2d 413 (5th Cir. 1991); In re Grand Jury Matter, Gronowicz, 764 F.2d 983 (3d Cir. 1985).

### g.  Challenges to Authority & Standing

Defendant's challenges to the authority of the Court, and the standing and authority of the United States Attorney's Office for the Northern District of New York to prosecute the case, are frivolous.

> Article III provides for the establishment of a court system as one of the separate but coordinate branches of the National Government. It is the primary, indeed the sole business of these courts to try cases and controversies between individuals and between individuals and the Government. This includes trial of criminal cases. These courts are presided over by judges appointed for life, subject only to removal by impeachment.

United States *ex rel.* Toth v. Quarles, 350 U.S. 11, 15-16 (1955).

The undersigned was confirmed by the United States Senate as a United States district judge for the Northern District of New York on March 3, 1986.  See 132 Cong. Rec. S1918-01.

The Office of the United States Attorney was created by the Judiciary Act of 1789 which provided for the appointment "in each district of a meet person learned in the law to act as attorney for the United States . . . whose duty it shall be to prosecute in each district all delinquents for crimes and offenses, recognizable under the authority of the United

10

States, and all civil actions in which the United States shall be concerned . . . ." 1 Stat. 92. Today, as in 1789, the United States Attorney retains, among other responsibilities, the duty to "prosecute . . . all offenses against the United States." 28 U.S.C. § 547(1). Accordingly, the instant case was properly prosecuted by the Office of the United States Attorney for the Northern District of New York to redress the injury to the United States caused by Defendant's criminal conduct occurring in this District.

## V.   CONCLUSION

For the reasons discussed above, Defendant's motion for a judgment of acquittal or a new trial [dkt. # 114] is **DENIED.**

**IT IS SO ORDERED**

DATED: May 13, 2011

*Thomas J. McAvoy*

11